Phillip REDDIN, Plaintiff-Appellee,

v.

Thomas R. ISRAEL, Defendant-Appellant.

Nos. 77–1317, 77–1318.

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1977.

Decided Sept. 2, 1977.

Bronson C. LaFollette, Atty. Gen., James H. Petersen, Asst. Atty. Gen., Madison, Wis., for defendant-appellant.

Charles Bennett Vetzner, Madison, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge and GRANT, District Judge.*

CUMMINGS, Circuit Judge.

Phillip Reddin was paroled from the Kentucky State Penitentiary on July 8, 1972. In December of 1974 he was convicted of manslaughter in Wisconsin and sentenced to an indeterminate term not to exceed nine years at the Wisconsin State Prison in Waupun. On January 30, 1975, a parole violation warrant was filed by the Kentucky Parole Board at the Wisconsin prison. In a cover letter, the Kentucky Parole Board requested that the warrant be filed as a detainer and that the warden notify the Board thirty days prior to plaintiff's release. Subsequently, Reddin obtained the assistance of law students at the University of Wisconsin who were acting under the auspices of the Wisconsin Law School Legal Assistance Program. A request was made to the Kentucky Parole Board that the re-

mainder of the Kentucky sentence run concurrently with the Wisconsin sentence. The Kentucky Board refused to withdraw the detainer placed against Reddin and denied the request for a concurrent sentence. A later request for a prompt parole revocation hearing was also denied.

Reddin then filed a 42 U.S.C. § 1983 civil rights complaint against the warden asserting that the presence of the detainer had adverse effects on the condition of his confinement in violation of the Fourteenth Amendment. He requested a preliminary and permanent injunction and a declaratory judgment. In its initial decision rendered on September 28, 1976, the district court granted plaintiff summary judgment, holding that Reddin had been denied due process because the defendant had given effect to the detainer without Kentucky's granting a prompt parole revocation hearing. 418 F.Supp. 1144. The district court relied primarily on *Cooper v. Lockhart*, 489 F.2d 308 (8th Cir. 1973),[1] which held that the added punitive restrictions which result when a custodial state recognizes the detainer lodged by a sister state results in a due process violation in the absence of a prompt parole revocation hearing. The district court ordered that the Kentucky Parole Board be notified of the decision. The court also enjoined the warden from continuing any special treatment of Reddin as a result of the detainer unless Kentucky granted a parole revocation hearing within sixty days. It has not done so.

Shortly after the district court entered its decision the Supreme Court decided *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236. Believing *Moody* to be dispositive, the defendant moved for relief from the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *Moody*

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. *Cooper* is no longer good law. See *Moody v. Daggett, infra*. The district court also relied on *United States ex rel. Hahn v. Revis*, 520 F.2d 632 (7th Cir. 1975) another pre-*Moody* case. In a later chapter in *Hahn*, we stated, "It is clear

that much of the reasoning in our [first *Hahn*] opinion must give way to *Moody*." *United States ex rel. Hahn v. Revis*, 560 F.2d 264, 265 (7th Cir. decided *per curiam* July 19, 1977). See also *Head v. United States Board of Parole*, 553 F.2d 22 (7th Cir. 1977), certiorari denied, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277.

held that a federal parolee, imprisoned for a federal crime committed during parole, is not constitutionally entitled to a prompt parole revocation hearing when a parole violation warrant is filed at the custodial prison as a detainer but not served on him. Both the crime giving rise to the parole and the crime committed while on parole occurred within the jurisdiction of the United States Court for the District of Arizona which dismissed Moody's habeas corpus petition. In a decision and order of March 7, 1977, Judge Reynolds determined that *Moody* was distinguishable, denied defendant's motion for relief and held that *Moody* required no modification of his earlier decision. The warden appeals from both the September 28, 1976 and March 7, 1977 orders.

Initially, this Court must consider whether summary judgment was an appropriate disposition. Summary judgment is authorized "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is * * * [and where] no genuine issue remains for trial * * *." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458. Where there is a genuine issue as to a material fact, summary judgment is of course improper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153–161, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Gautreaux v. Romney*, 448 F.2d 731 (7th Cir. 1971). Thus it is necessary to review the record to determine whether a material issue remains for trial.

The issue before the district court was whether the unexecuted Kentucky parole violation warrant lodged in the Wisconsin prison resulted in certain adverse effects so as to deny Reddin liberty interests protected under the Due Process Clause of the Fourteenth Amendment. The warden contends that there are a number of material factual issues which were left unresolved by the district court, thereby rendering summary judgment improper. The adverse effects suffered by plaintiff which he alleges resulted directly from the filing of the detainer were: (1) a maximum security classification making him ineligible for certain job assignments and for transfer to a less secure Wisconsin institution which maintains various rehabilitation programs unavailable at the Waupun institution; (2) being deemed a poor parole risk; (3) deprivation of an opportunity to serve his remaining Kentucky sentence concurrently with the Wisconsin sentence; and (4) a detrimental psychological effect. The district court acknowledged that some of these facts were in dispute, but decided that they were not material.

The primary adverse effect which Reddin claims results from the detainer in his file is that he was restricted to a maximum security classification instead of being eligible for the desired minimum security facility. At oral argument, counsel admitted that this assertion was in error. Although it is apparent that Reddin is eligible for transfer to medium security, he is not eligible for transfer to a minimum security facility. An affidavit submitted by Donald Clark, Classifications Chief of the Bureau of Institutions of Wisconsin, on January 9, 1976, admits that it is a general policy in Wisconsin to prohibit transfer of a prisoner to minimum security if that prisoner has a detainer from another jurisdiction in his file. However, other than preventing Reddin from being off the prison grounds without supervision, the Clark affidavit states that the only other difference between medium and minimum confinement is that the existence of the detainer currently acts to prohibit Reddin from participating in a new project known as mutual agreement programming whereby inmates may "contract" for an earlier parole date in exchange for explicit promises pertaining to good conduct and participation in institutional programs.

The affidavit also states that the mutual agreement programming is a relatively new project and that the benefits are currently being expanded and may eventually include those subject to felony detainers. An additional assertion in the Clark affidavit states that a prisoner such as Reddin, who, at the time of Clark's affidavit, had served one year (and now has served two and one half

years) of a nine-year manslaughter charge, would not be eligible for minimum security status regardless of his institutional conduct. In reviewing the district court's grant of summary judgment, these assertions must be taken as true.

Accepting Clark's assertion that Reddin would not be subject to minimum security classification as a result of the severity of his crime and length of his sentence, ignoring or removing the detainer may have no effect on his classification. Reddin apparently would still remain ineligible for transfer to minimum security. It also appears that prisoners who have felony detainers in their files may not be the only prisoners who are currently prohibited from participation in the mutual agreement programming. Thus the removal of the detainer would not necessarily enable Reddin to participate in the program.

■ The facts in dispute are material to the issue in this case, as the relevant inquiry for the district court is whether the prison officials have deprived Reddin of a protected liberty interest without due process. If these disputed facts are resolved in the warden's favor, then Reddin is deprived of no liberty interest only traceable to the detainer. Therefore, it is not possible on this record to decide whether any adverse effect resulting from the detainer, standing alone, results in a grievous loss to Reddin in the constitutional sense. The underlying basic factual issues must be resolved before determining whether, in this state-to-state detainer context, Reddin may have had a protected interest violated.[2] The warden should have been permitted to offer proof showing that the filing of the detainer deprived Reddin of no greater liberty interest than he would have experienced in any event because of other circumstances attending the character of his particular status as a prisoner.

■ Reddin's assertion that he is considered a poor parole risk as a result of the detainer does not support summary judgment. There is no indication in the record that Reddin was considered a poor parole risk as a result thereof. The Wisconsin parole eligibility statute[3] does not establish any different treatment for a prisoner who has a detainer lodged against him. Nor does the complaint allege the existence of Wisconsin regulations or a general policy promoting such a practice. Reddin's ineligibility for the mutual agreement programming, an experimental and discretionary program which might later be extended to him anyway, is too speculative to be declared a grievous loss to which process is due. *Moody v. Daggett, supra,* 429 U.S. at 88 n. 9, 97 S.Ct. 274; *Meachum v. Fano,* 427 U.S. 215, 224–225, 96 S.Ct. 2532, 49 L.Ed.2d 451. The bald assertion that the existence of the detainer resulted in Reddin's being deemed a poor parole risk simply is not supported in the record.

■ Reddin's contention that he suffers a "detrimental psychological effect" because of the detainer was only stated in the verified complaint. Although the Clark affidavit does not refute this proposition, the state need not avoid conduct which may result in "detrimental psychological effects" unless the state acts in a torturous or barbarous manner or with a wanton intent to inflict pain. *Estelle v. Gamble,* 429 U.S. 97, 105–106, 97 S.Ct. 285, 50 L.Ed.2d 251; *Little v. Walker,* 552 F.2d 193 (7th Cir. 1977); cf. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859. The record before the district court does not allow such a finding. Reddin did not establish that he was entitled to summary judgment by an assertion of "detrimental psychological effect."

2. Even a determination that Reddin suffered a grievous loss does not necessarily mean that a protected interest has been violated in view of the recent decision in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451. There the Court stated "we cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause." *Id.* at 224, 96 S.Ct. at 2538. See also *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14.

3. Wis.Stat. § 57.06.

■ The only other assertion of adverse impact resulting from the detainer is that Reddin allegedly would be deprived of an opportunity to serve his remaining Kentucky sentence concurrently with the Wisconsin sentence. But cf. *inter se*, Ky.Rev. Stat. §§ 439.430(3), 532.110 and 533.060(2). The district court found this factor, along with the loss of opportunity to preserve mitigative evidence (even though Reddin has never indicated what, if any, evidence he is in danger of losing), to be the bases for its second decision distinguishing *Moody v. Daggett.* But see 429 U.S. at 88 n. 9, 97 S.Ct. 274. Assuming *arguendo* that these factors constitute a grievous loss in the constitutional sense and may be distinguished from *Moody* and *Meachum v. Fano, supra,* it is not the filing of the detainer in Wisconsin which would have engendered such a violation. The possibility of a loss of liberty as a result of these factors would be caused by the failure of the Kentucky Parole Board to grant Reddin a prompt revocation hearing. As the district court below lacks jurisdiction to order the Kentucky board to do so, any claim regarding these factors, including the issue of whether *Moody* controls or is distinguishable, must be left to a court of requisite jurisdiction. The Wisconsin district court is in a position to determine only whether Wisconsin state officials have violated a protected interest of Reddin by treating him differently solely because the detainer is in his file. The question of whether they actually have done so remains in dispute because of unresolved material issues of fact. It is therefore necessary to reverse the judgment and remand the case for further proceedings consistent herewith.[4]

---

4. By order of June 9, 1977, we granted appellant's motion to suspend the district court's November 4, 1976, injunction pending this appeal. Because we reverse the district court, our order has, of course, become moot.