See also *Seattle University, supra* at 5246; *Brunswick School Board, supra* 449 F.Supp. at 873, 16 EPD at 5253.

Accordingly, the Court concludes that plaintiff's motion for summary judgment should be granted and that defendants' motion should be denied. Since this Court has construed 20 U.S.C. § 1681 to apply only to students and other direct beneficiaries of federal financial assistance and not to apply to employees of recipient institutions, defendants had no authority to promulgate and enforce 45 C.F.R. §§ 86.51 and 86.54. Declaratory and injunctive relief will be entered for plaintiff.

---

**Phillip REDDIN, Plaintiff,**

v.

**Thomas R. ISRAEL, Defendant.**

**Civ. A. No. 75–C–616.**

United States District Court,
E. D. Wisconsin.

Sept. 21, 1978.

---

Charles Bennett Vetzner, Asst. State Public Defender, Madison, Wis., for plaintiff.

Bronson C. LaFollette, Atty. Gen., and James H. Petersen, Asst. Atty. Gen., Madison, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, District Judge.

The present action has been brought by the plaintiff, an inmate at the Waupun Correctional Institution at Waupun, Wisconsin, to contest the conditions of confinement imposed upon him by the defendant, the warden at the aforesaid institution. This court has jurisdiction to entertain the action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. *Cooper v. Lockhart,* 489 F.2d 308, 310 (8th Cir. 1973). After filing a stipulation of facts which the plaintiff and the defendant agree are comprehensive and complete, both parties moved for summary judgment. For the reasons stated below, the plaintiff's motion for summary judgment is granted in part and denied in part, and the defendant's motion is granted in part and denied in part.

By way of factual background, the plaintiff was convicted of the crime of robbery in the Commonwealth of Kentucky, for which he received an eight-year sentence. The Kentucky authorities released him on parole to the State of Wisconsin on July 8, 1972, but in 1974, while still on parole from Kentucky, the plaintiff was convicted in Wisconsin of the crime of manslaughter. He received a sentence of nine years which he is presently serving at a maximum security institution.

On January 30, 1975, the Commonwealth of Kentucky filed, but did not execute, a parole revocation warrant against the plaintiff, which warrant the Wisconsin prison authorities received and filed as a detainer against the release of the plaintiff from prison. The plaintiff protested that the filing of the detainer was causing the plaintiff to be deprived of certain rights without due process of law in that he was being denied a prompt parole revocation hearing in violation of *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and that he was being subjected to more onerous conditions of confinement than were prisoners who had no detainers filed against them. When the detainer was not removed, the plaintiff filed suit in this court to have the defendant enjoined from treating the plaintiff differently than other prisoners due to the presence of the detainer.

On September 28, 1976, in a memorandum decision and order reported at 418 F.Supp. 1144 (E.D.Wis.1976), this Court granted summary judgment in favor of the plaintiff and enjoined the defendant from imposing special conditions of confinement upon the plaintiff because of the parole revocation detainer unless the Kentucky authorities promptly conducted a parole revocation hearing. The Court held—

"that the defendant denies the plaintiff due process by giving effect to a parole revocation detainer placed on him at the request of a sister state which refuses to promptly conduct a parole revocation hearing. Accordingly, the defendant shall promptly notify the appropriate Kentucky authorities of this decision. In the event that the Kentucky authorities do not request within 60 days of this decision's date that the plaintiff be made available for a timely parole revocation hearing, the defendant must discontinue the special conditions of confinement stemming from the parole revocation detainer." *Reddin v. Gray,* 418 F.Supp. at 1146.

Subsequent to the grant of summary judgment in favor of the plaintiff, the Supreme Court decided *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), wherein the Supreme Court held that a prompt parole revocation hearing need not be accorded to a prisoner convicted of a federal crime while on parole from imprisonment for the commission of an earlier federal crime. The Supreme Court found that the failure to grant a prompt hearing did not cause the deprivation of any constitutionally protected interest. Reconsidering in light of *Moody* the grant of summary judgment in favor of the plaintiff, this Court found *Moody* distinguishable in a decision and order dated March 7, 1977, in that the plaintiff in this case faced a real possibility of deprivation of protected rights due to the absence of a prompt revocation hearing. Unlike the petitioner in *Moody,*

without a prompt revocation hearing the instant plaintiff would suffer the loss of opportunity to preserve mitigation evidence and loss of opportunity to serve his sentences concurrently. Therefore, the grant of summary judgment survived *Moody.*

The defendant appealed the decision of this court to the Seventh Circuit Court of Appeals, which court reversed the grant of summary judgment in favor of the plaintiff. See *Reddin v. Israel,* 561 F.2d 715 (7th Cir. 1977). The Seventh Circuit held that the grant of summary judgment in favor of the plaintiff was inappropriate because certain issues of material fact remained in genuine dispute. Specifically, the Seventh Circuit concluded that a dispute existed as to what deprivations of constitutionally protected rights, if any, the plaintiff suffered as the result of the filing of the detainer against him:

> "The facts in dispute are material to the issue in this case, as the relevant inquiry for the district court is whether the prison officials have deprived Reddin of a protected liberty interest without due process. If these disputed facts are resolved in the warden's favor, then Reddin is deprived of no liberty interest only traceable to the detainer. Therefore, it is not possible on this record to decide whether any adverse effect resulting from the detainer, standing alone, results in a grievous loss to Reddin in the constitutional sense. The underlying basic factual issues must be resolved before determining whether, in this state-to-state detainer context, Reddin may have had a protected interest violated. The warden should have been permitted to offer proof showing that the filing of the detainer deprived Reddin of no greater liberty interest than he would have experienced in any event because of other circumstances attending the character of his particular status as a prisoner.
>
>       \*     \*     \*     \*     \*     \*
>
> " \* \* \* The Wisconsin district court is in a position to determine only whether Wisconsin state officials have violated a protected interest of Reddin by treating him differently solely because the detainer is in his file. The question of whether they actually have done so remains in dispute because of unresolved material issues of fact. It is therefore necessary to reverse the judgment and remand the case for further proceedings consistent herewith." *Reddin v. Israel,* 561 F.2d at 718–719 (footnotes omitted).

Upon the reversal and remand of this action by the Seventh Circuit, the plaintiff and the defendant stipulated to and filed with the court a set of facts which both parties agree is complete and comprehensive. The parties then filed cross motions for summary judgment, which motions are presently before the court.

The court accepts the stipulation of facts as the basis for disposing of the present summary judgment motion. The stipulation shows that the detainer is having certain adverse effects on the plaintiff's conditions of confinement. Due to the existence of the detainer, the plaintiff is per se ineligible for being granted a minimum security classification which bars him from being able to serve his sentence at a minimum security prison rather than a more onerous maximum security prison and from being able to participate in certain rehabilitation programs, such as release from prison for periods of time to attend classes or to work at a job. Due to the existence of the detainer the plaintiff is also ineligible for participation in a program known as the Mutual Agreement Program ("MAP"), under which a prisoner who fulfills promises to meet a certain level of accomplishment in prison may be released from prison at an earlier date than he would be paroled without participating in the program. The plaintiff is completely ineligible for a minimum security rating and MAP because of the detainer, and inmates with detainers, such as the plaintiff, are the only prisoners who are per se excluded from minimum security status and from participation in MAP. The plaintiff remains ineligible despite his excellent institutional adjustment disciplinary record, and work ratings.

In addition to these agreed adverse effects of the detainer, the plaintiff argues that the detainer has had an adverse effect upon his possibility of obtaining a parole. The stipulation of facts reveals that the parole board in making parole decisions is aware that an inmate has a detainer lodged against him and does take the detainer into account, although the stipulation does not show whether or not the board treats a detainer as a factor mitigating against parole. A detainer does not constitute a bar or even a presumption against parole. Moreover, the stipulation shows that the parole board gives more weight to a record of good adjustment achieved in a minimum security institution or in work or study release programs than a similar record achieved in a maximum security environment. From the facts that the parole board takes the existence of a detainer into account and that the plaintiff is barred from earning favor with the parole board by compiling a good record in a minimum security institution or work or study release programs requiring a minimum security rating, the plaintiff maintains that he has suffered an adverse effect upon the possibility of obtaining parole.

Since the stipulation of facts resolves the earlier underlying factual disputes with which the Seventh Circuit was concerned, the issue in these motions for summary judgment is the legal question of whether or not the plaintiff has suffered a deprivation of his procedural or substantive rights under the Fourteenth Amendment due to the special conditions of confinement imposed upon him because of the detainer. This question is addressed first in terms of the assertedly wrongful per se exclusion of the plaintiff from consideration for placement in a minimum security institution and for participation in certain rehabilitation programs for which a minimum security classification is required, and second, in terms of the exclusion of the plaintiff from participation in MAP.

## I. Minimum Security Classification

### A. Procedural Due Process

In terms of the plaintiff's right to procedural due process, the legal question is whether or not the adverse effects suffered by the plaintiff as the result of the detainer amount to such grievous losses that the plaintiff has been deprived of a protected liberty or other interest without due process of law. The plaintiff is not entitled to relief unless he can establish such deprivations of constitutionally protected liberty interests. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

■ The plaintiff appears to concede that his ineligibility for a minimum security institution and certain programs requiring a minimum security classification, aside from the effect of the ineligibility on parole board decisions, does not amount to deprivation of a constitutionally protected liberty interest. Absent a statutory right created by the State of Wisconsin, the plaintiff has no constitutionally protected liberty or other interest in his prisoner classification or eligibility for rehabilitation programs, even when imposition of a particular classification or denial of eligibility for certain programs causes a grievous loss. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court stated at 88 n. 9, 97 S.Ct. at 279:

> " * * * In *Meachum v. Fano*, 427 U.S. 215 [96 S.Ct. 2532, 49 L.Ed.2d 451] (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."

Since the plaintiff has not demonstrated that he has any statutory right or other entitlement to being considered for minimum security status and participation in certain rehabilitation programs, the defend-

ant's actions of classifying the plaintiff in maximum security status and denying him eligibility for the rehabilitation programs do not deny the plaintiff procedural due process. See *Solomon v. Benson*, 563 F.2d 339 (7th Cir. 1977).

The plaintiff's main claim to a deprivation of his right to procedural due process arises from the effect which he believes the detainer has on his possibility for securing parole. As noted above, the plaintiff believes that the detainer has an adverse effect because it is a factor considered by the parole board and because it prevents the plaintiff from compiling a good record in a minimum security institution. Arguably, the plaintiff has a due process right in his expectation of parole and in not being excluded from participation in programs that might favorably influence the parole board. See *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976). But the facts of the present case do not demonstrate any denial of due process. The plaintiff has been given hearings before the parole board, and he does not contend that the hearings were constitutionally deficient in any way. He had the opportunity to make the parole board fully aware of the circumstances surrounding the existence of the detainer and to inform the board how the detainer prevented him from being eligible for minimum security status and for rehabilitation programs. Thus, the plaintiff was not denied any right to a hearing.

Moreover, the facts to which the plaintiff has stipulated do not reveal that any consideration of the detainer by the parole board of his inability to compile a good record in minimum security due to the detainer has caused the parole board to deny him parole. In actuality, the record does not reveal any indication that the parole board gave the detainer any adverse weight at all in its parole decisions. The records of the parole board's denial of parole to the plaintiff in 1977 and 1978, attached to the stipulation of facts, respectively, as the last two pages of Exhibit A and as Exhibit C, show that the board was aware of the existence of the detainer, but the records make clear that the denials were premised upon the serious nature of the plaintiff's crimes, the length of his present sentence, and his record of poor adjustment while under previous parole supervision. The present record of this case, therefore, does not reveal that the detainer, directly or indirectly, caused the plaintiff to be denied parole or that the detainer was even a significant factor in the decision to deny parole. In light of the factors cited by the parole board, there is no indication that the plaintiff would have fared any better before the board if he had been able to compile a good record in a minimum security institution or in work or study release programs. The conclusion follows that the plaintiff has not been denied any due process right to fair consideration for grant of parole due to the detainer.

Therefore, the Court finds that the plaintiff has not established that he has suffered the deprivation of a constitutionally protected liberty or other interest due to the detainer's effect of rendering him ineligible for a minimum security institution and for participation in certain rehabilitation programs for which a minimum security rating is required.

B. *Substantive Due Process*

The plaintiff, citing *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), has also challenged his ineligibility for minimum security status and for participation in certain rehabilitation programs on the theory that the defendant's reliance upon the detainer creates an unconstitutional irrebuttable presumption that the plaintiff is not suitable for minimum security status and for participation in the programs. While it is doubtful that the irrebuttable presumption doctrine of *Vlandis* is applicable in this case since the plaintiff has shown no infringement of an important liberty or other interest, see *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (refusing to apply the irrebuttable presumption analysis to an asserted right that did not have the status of a constitutionally protected interest), the question of the applicability of that analysis

need not be decided here. The parties' arguments have made clear that the defendant's practices with respect to detainers are to be evaluated under the traditional substantive due process and equal protection standard that is applied to governmental classifications: a classification will be upheld if it bears a rational relationship to a legitimate governmental objective. *Weinberger v. Salfi*, supra; *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *French v. Heyne*, 547 F.2d 994 (7th Cir. 1976).

▮ The plaintiff has argued that the defendant's per se exclusion of prisoners with detainers from minimum security status and from participating in certain rehabilitation programs requiring minimum security status does not bear a rational relationship to a legitimate governmental purpose. As stipulated, the rationale for the per se exclusion is a belief that all prisoners with detainers pose such a high risk of escape that they cannot be trusted in minimum security status. The Wisconsin prison authorities believe that a prisoner who faces the possibility of additional incarceration in another state at the end of his present sentence is more likely to attempt an escape than a prisoner who does not face such additional incarceration.

The defect in the defendant's treatment of prisoners with detainers is that the purported concern with prison security is contradicted by the prison authorities' other practices with respect to minimum security classification. For all prisoners but those with detainers, the prison authorities will impose a security classification on the basis of the individual's record, including the length of his sentence and the time remaining to be served on that sentence. According to the stipulated facts, such individualized determinations could result in the granting of minimum security status to a prisoner without a detainer who has a much longer period of time to serve than the plaintiff with a detainer. Thus, the plaintiff, who faces imprisonment for approximately five and one-half more years on his Wisconsin sentence and approximately five more years on his Kentucky sentence, may automatically be treated as a greater risk than a prisoner without a detainer who is serving a sentence much longer than ten years. Such disparate treatment of prisoners with detainers would appear to be an arbitrary and irrational classification.

Moreover, the parties have stipulated that in the opinions of two experts, the former and the present Classification Chiefs of the Wisconsin Division of Corrections, persons with detainers do not necessarily pose a greater risk than persons without detainers. In the experts' opinions, a determination of a person's potential security risk requires an individualized consideration of a variety of factors.

Therefore, since the defendant has rendered the plaintiff ineligible for minimum security status on a basis which does not bear a rational relationship to a legitimate state purpose, the plaintiff's Fourteenth Amendment rights have been violated. The defendant will be enjoined from automatically barring the plaintiff from consideration for minimum security status on the basis of the detainer. This holding is not in conflict with the Supreme Court's decision in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montayne v. Haynes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), wherein it was held that prisoners have no liberty or other interest in their prison classifications sufficient to call for the application of *procedural* due process protections. The holding in this case is only that the classification of the plaintiff on the basis of the detainer does not bear a rational relationship to a legitimate governmental purpose.

II. *Mutual Agreement Program ("MAP")*

▮ Like work-release and study-release programs, MAP is a rehabilitation program under which a prisoner "contracts" to meet a specified level of behavior and accomplishment while serving his sentence in exchange for securing a release from prison at a date earlier than he would normally be paroled. MAP is designed to give an inmate incentive to prepare himself

through employment or study for early release from prison into a community in which the inmate has been working or studying while imprisoned and participating in MAP. According to the stipulated facts, one of the primary purposes of MAP is to better prepare inmates to survive in the community in the State of Wisconsin, and anything that will not allow release directly into the particular community is considered to contradict the MAP philosophy. MAP was not created by statute, but rather, it is the administrative creation of the Wisconsin prison authorities. Unlike the situation at the time the Seventh Circuit reversed this Court's earlier grant of summary judgment for the plaintiff, MAP is now a permanent, nonexperimental program. Prisoners with detainers are the only prisoners who are per se barred from consideration for participation in MAP, and the stipulated rationale for the exclusion of prisoners with detainers is the assumption that such prisoners will be caused to leave Wisconsin to answer charges in the demanding jurisdiction and thus will not be able to be released directly into the community as contemplated in MAP.

The plaintiff attacks this rationale as not being rationally related to the legitimate concern that prisoners participating in MAP be released into the community. Since the jurisdictions filing detainers with Wisconsin prison authorities do not always assume custody of the prisoner with the detainer when he becomes available, the plaintiff argues that there is no rational basis for believing that an inmate with a detainer will be unable to be released directly to the community if allowed to participate in MAP. It thus appears that there is some over-inclusiveness in the per se bar of prisoners with detainers from participation in MAP. The per se bar results in denial of MAP benefits to those prisoners with detainers who in fact are not taken into custody when they become available to the state filing the detainer.

However, nothing in the constitution requires that, absent an infringement of a fundamental interest or absent an effect on a suspect class, an administrative classification must achieve a perfect fit with no overinclusiveness. *Weinberger v. Salfi, supra; Williamson v. Lee Optical Co., supra.* In *Weinberger v. Salfi,* a per se rule that a woman married less than nine months prior to her husband's death was not entitled to social security benefits was upheld even though it would result in the exclusion from benefits of women whose marriages were not 'shams but had occurred less than nine months prior to the death of the husband. In similar fashion, the exclusion of prisoners with detainers from participation in MAP must be upheld even though some such prisoners might actually be available for release into the community upon completion of their Wisconsin sentences. As created by the Wisconsin prison authorities, an important aspect of MAP is direct release into the community, and exclusion of prisoners with detainers is rationally related to the legitimate purpose of insuring that prisoners participating in MAP are capable of meeting that aspect of the program.

Since the exclusion of prisoners with detainers from participation in MAP is rationally related to a legitimate governmental purpose, the conclusion follows that the exclusion of the plaintiff from that program did not violate his rights under the Fourteenth Amendment.

NOW, THEREFORE, IT IS ORDERED that the plaintiff's motion for summary judgment and the defendant's motion for summary judgment be and they hereby are each granted in part and denied in part in accordance with the terms of this decision.

IT IS FURTHER ORDERED that the defendant be and he hereby is enjoined from treating the plaintiff as ineligible for a minimum security classification solely because there is a detainer filed against the release of the plaintiff from prison.