**Robert FOSTER, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

No. C–3–80–111.

United States District Court, S. D. Ohio, W. D.

May 29, 1981.

Robert Foster, pro se.

James A. Wilson, Federal Public Defender, for respondent.

---

DECISION AND ENTRY DISMISSING PETITION FOR WRIT OF HABEAS CORPUS OR MANDAMUS, WITHOUT HEARING; REQUEST FOR APPOINTMENT OF COUNSEL DEEMED MOOT; TERMINATION ENTRY

RICE, District Judge.

The captioned cause is before the Court upon two matters, to wit:

(1) consideration of the necessity for an evidentiary hearing on petitioner's petition, which seeks relief in the nature of the issuance of a writ of habeas corpus or of mandamus against the United States Parole Commission; and

(2) petitioner's motion seeking an Order of the Court appointing counsel to represent him in these proceedings.

Petitioner is well-traveled. It appears from the record, herein, that in August, 1967, while on parole from a sentence being served at the United States Penitentiary in Terre Haute, Indiana, petitioner was arrested in Cincinnati, Ohio. In December, 1967, as a result of that arrest, petitioner was convicted in this Court of transporting and conspiring to transport false checks in interstate commerce. He was sentenced to 11 years confinement in federal custody at the United States Penitentiary in Marion, Illinois.

In March, 1974, petitioner was given mandatory release (as if on parole) from incarceration under the 1967 conviction. Between October, 1974, and April, 1975, federal parole authorities became aware of new state criminal charges against petitioner in Kentucky and Ohio. Petitioner failed to comply with reporting conditions of his federal release after January, 1975. Thus, on April 16, 1975, federal parole authorities obtained a warrant for revocation of petitioner's mandatory release. At this time, petitioner's whereabouts were unknown.

In July, 1975, petitioner was arrested by Ohio authorities on state forgery charges. On September 24, 1975, he was convicted of forgery by the Common Pleas Court, in Hamilton County, Ohio, and was sentenced to an indeterminate term of 1 to 10 years confinement, to be served at the state correctional facility in Chillicothe, Ohio. The outstanding federal release revocation warrant was filed as a detainer with state authorities.

Petitioner became eligible for parole under the state conviction in May, 1976, but parole was denied him at that time. In December, 1977, while still in state custody, petitioner was convicted of civil contempt by the Federal District Court for the Southern District of West Virginia, at Charleston, and was sentenced to a term of 18 months in federal custody.

In April, 1978, petitioner was advised by Ohio authorities that he would be paroled from the state sentence "on or after May 15, 1978—Detainer Only." It is unclear whether "detainer" referred to the contempt sentence pending in West Virginia, or the release revocation warrant issued under the 1967 federal conviction. In any event, on June 1, 1978, petitioner was released from Chillicothe and incarcerated at the Kanawha County Jail in Charleston, West Virginia.

On June 27, 1978, petitioner filed his petition (subsequently amended to its present form) in the federal district court at Charleston. Under nominal authority of 28 U.S.C. § 1361 (mandamus jurisdiction) and 28 U.S.C. § 2241 (general habeas corpus jurisdiction), petitioner sought a writ requiring the United States Parole Commission to quash the mandatory release revocation warrant issued in April, 1975, and also sought to have his 1967 federal sentence credited for time spent in Ohio custody under detainer pursuant to said warrant. Petitioner was instructed to refile his petition on approved forms for motions under 28 U.S.C. § 2255 (motion to vacate or correct federal sentence). He did so and the matter was referred to the federal magistrate in Charleston.

In a series of orders between August 9, 1978 and May 24, 1979, the Magistrate: (1) questioned the West Virginia federal court's jurisdiction, under 28 U.S.C. § 2255, to correct any sentence imposed by an Ohio federal court; (2) appointed the Charleston public defender to represent petitioner (which counsel amended the petition to its present form on May 15, 1979); and (3) repeatedly ordered the United States Parole Commission to respond to the petition.

On June 29, 1979, upon completion of petitioner's 18 month sentence for contempt of the Charleston federal court, the mandatory release revocation warrant was finally executed. Petitioner was released from confinement in West Virginia and was incarcerated at the federal penitentiary in Terre Haute, Indiana, pursuant to said warrant. On July 30, 1979, the United States Parole Commission appeared in Charleston federal court for the first time. The Commission moved for dismissal of the petition or, in the alternative, for transfer of the matter to the federal court for the South-

ern District of Indiana, contending that the Charleston federal court lacked jurisdiction.

In August, 1979, while the Commission's motion was pending before the Charleston magistrate, federal parole authorities at Terre Haute gave petitioner a hearing on revocation of the mandatory release. By notice of September 20, 1979, petitioner was advised: (1) that his mandatory release was revoked; (2) that no time spent on mandatory release (implicitly, including time spent in Ohio custody under detainer pursuant to the release revocation warrant) would be credited against the 1967 sentence; and (3) that he would be paroled, effective January 17, 1980, upon condition that he obtain drug care and placement in a community treatment center.

For some reason not on the record, petitioner was apparently released from Terre Haute in early November, 1979, more than two months in advance of the scheduled date for parole. Petitioner thereupon took up residence at a "halfway house" in Cincinnati, Ohio.

On November 29, 1979, the Charleston magistrate acted upon the Commissioner's pending motion. The Magistrate recommended that the matter be transferred to this Court because the Charleston federal court had "lost jurisdiction" over petitioner and his custodian.

In March, 1980, petitioner was arrested by Ohio authorities for attempting to negotiate a forged check at a savings and loan in Cincinnati. Petitioner was convicted of such offense in the Hamilton County Common Pleas Court on April 29, 1980, and was sentenced to a term of 2 to 5 years. It appears that petitioner is presently serving that term at the state correctional facility in Chillicothe, Ohio.

In early April, 1980, the West Virginia federal court acted upon the Charleston magistrate's pending recommendation and ordered that the matter be transferred to this Court. In that Order, Judge Knapp also noted that the petition had been "inadvertently" considered as a motion under 28 U.S.C. § 2255, but that it should be treated as a petition for writ of habeas corpus under 28 U.S.C. § 2241. After docketing in this Court, the United States Parole Commission filed a response and supplemental response to the petition.

The petition was filed and amended while petitioner was serving the federal contempt sentence in West Virginia. Prior to that time, the mandatory release revocation warrant on the 1967 federal conviction had been issued and filed as a detainer with Ohio authorities (i. e., while petitioner was serving the 1975 state forgery sentence). By the time the petition was filed and amended, the warrant had remained unexecuted for over four years, and no release revocation hearing had been held with respect to the warrant during that time. (As it turned out, the warrant would remain unexecuted for four years and two months, and the revocation hearing would follow within 60 days of the warrant's execution.) In the amended petition, petitioner contended that the *ex parte* issuance of the warrant, and failure to hear or execute same in a timely manner, prejudiced his eligibility for immediate parole (i. e., May, 1976), work release, and home furlough privileges under the 1975 Ohio sentence, and, therefore, denied him due process. He demanded relief in the form of an order quashing the warrant and associated state detainer or, in the alternative, a writ of mandamus directing federal parole authorities to hold a hearing on his release revocation. Petitioner's demand, in the original petition, that the time spent in Ohio custody under detainer pursuant to the unexecuted federal warrant be credited against his 1967 federal sentence, was not included in the amended petition.

Under the circumstances, it appears that petitioner's cause in this Court is *moot.* The federal warrant has been executed and the associated state detainer has necessarily been lifted. A hearing has been held on the revocation of petitioner's release. Although petitioner was not given credit against the 1967 federal sentence for time spent in Ohio custody, as he originally requested, the decision on that matter is solely within the discretion of federal parole authorities. *Zerbst v. Kidwell,* 304 U.S. 359, 58 S.Ct. 872,

82 L.Ed. 1399 (1938). Thus, unless there was some due process defect in the failure to execute the warrant and hear petitioner's release revocation for over four years, which defect might *arguably* provide this Court with some grounds for vacating the results of the revocation hearing that was eventually held, there would appear to be nothing left for this Court to do—i. e., no relief which this Court might provide—in response to the petition.

In *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), a federal prisoner was released on parole with almost six years remaining to be served on his conviction for a federal rape offense. While on parole, he was arrested, convicted, and sentenced for two federal homicide offenses. Soon after his incarceration for the homicides, federal parole authorities issued but did not execute a parole violator's warrant with respect to the pending rape sentence. The warrant was filed as a detainer with the prisoner's custodian on the homicide offenses.

Although the prisoner requested a prompt hearing on the violator's warrant, the parole authorities indicated that they would not provide a hearing until the warrant was executed, at the completion of the homicide sentences. Some four years later, while still in custody for the homicides (with the warrant/detainer on the rape sentence still unexecuted), the prisoner sought habeas relief in federal court. Relying primarily on *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the prisoner contended that, under the due process clause, he was entitled to a prompt hearing on the violator's warrant, both because the warrant raised issues relating to

the revocation of his parole on the rape conviction (for which *Morrissey* would demand a prompt hearing), and because the unexecuted warrant/detainer materially affected the terms of his confinement on the homicide convictions (including the possibility that the rape and homicide sentences might be served concurrently).

The district court, circuit court and Supreme Court each rejected the prisoner's claim, unanimously holding that there is no due process entitlement to a parole revocation hearing at the time when a federal parole violator's or parole revocation warrant is filed as a detainer with the parolee's subsequent federal custodians. A "prompt" parole revocation hearing, pursuant to *Morrissey v. Brewer* becomes constitutionally mandated *only after the revocation warrant is executed,* i. e., after the intervening incarceration terminates and the parolee is taken in custody under the warrant as a parole violator. Where there is intervening custody under an unrelated conviction and the warrant is filed as a detainer with that custodian, the "confinement and consequent liberty loss derive *not in any sense* from the outstanding parole violator warrant, but from [the unrelated] conviction [ ] . . . . [E]xecution of the warrant and custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation." *Moody,* 429 S.Ct. at 86–87, 97 S.Ct. at 278. Since there is no liberty interest implicated by the warrant until its execution, the *Morrissey* "prompt hearing" requirement does not arise until after such execution. *Moody* at 86, 97 S.Ct. at 278.[1]

Petitioner would have the Court distinguish *Moody* on the basis that *Moody* in-

---

1. This Court is of the opinion that *Moody* was wrongly decided. As Justice Stevens points out in his well-reasoned dissent in *Moody,* the fact that the filing of a parole violator's warrant as a detainer with a subsequent custodian might not have an *immediate impact* on custodial status (with respect to either the paroled offense or subsequent offense) simply does not support the holding that due process does not attach until the warrant is executed (i. e., when custodial status is first affected). It is clear that if the prisoner's parole is to be eventually revoked under the warrant, due process re-

quires that the question of parole revocation be heard "sooner or later." Thus, the crucial inquiry is not whether due process attaches to the process of parole revocation—for it certainly must—but whether due process requires that the revocation hearing, which necessarily will be held in any event, must be held in a timely and prompt fashion, with "reasonable dispatch," after the parole violation or revocation charges are filed.

Cases, such as *Moody* and the petitioner's cause, herein, which involve the filing of a parole revocation warrant as a detainer with a

volved a *federal* parole revocation warrant filed as a detainer with a subsequent *federal* custodian, whereas petitioner's case involves a *federal* warrant filed with a subsequent *state* custodian. Petitioner points out that *Moody* explicitly reserved the question "[w]hether different issues would be presented by the prospect of adverse actions by *different and autonomous* parole authorities . . . ," *id.* at 88, 97 S.Ct. at 279 (emphasis added), and petitioner contends such difference was subsequently held to support a due process violation in *Reddin v. Gray*, 418 F.Supp. 1144 (E.D.Wis.1976), *motion for relief from judgment denied*, 427 F.Supp. 386, (D.C.), *rev'd on other grounds sub nom., Reddin v. Israel*, 561 F.2d 715 (7th Cir. 1977).

Petitioner's reliance on *Reddin* is misplaced. That case did involve a situation wherein one state's parole violator warrant was filed as a detainer with a subsequent custodian in another ("different and autonomous") state. However, *Reddin* was an action under 42 U.S.C. § 1983 in which a

prisoner sought (and obtained in the district court) injunctive relief *against the custodial authority* (prohibiting the custodian from determining any of the plaintiff-prisoner's conditions of confinement by reference to the unexecuted warrant, which had been issued without a timely hearing from the parole state). In contrast, the petitioner, herein, *does not seek relief against Ohio authorities* (by analogy to *Reddin*, the *custodial* state), but against the United States Parole Commission (an autonomous *parole* authority). Although petitioner does complain that the conditions of his Ohio confinement had been determined by reference to the unexecuted federal warrant, his action to correct that problem (according to the *Reddin* district court) would be against Ohio authorities—at this point, probably by seeking damages under section 1983—but *not* against the United States Parole Commission in a federal habeas corpus or mandamus proceeding.

This Court notes substantial dicta in the *Reddin* district court decisions to the effect

subsequent custodian are, in all material respects, indistinguishable from cases wherein pending criminal charges against individuals are filed as detainers with subsequent custodians. Under such circumstances, the Supreme Court has consistently (and rightly) held that the values of the Sixth Amendment, as incorporated in the due process clause of the Fourteenth Amendment, forbid the charging authority from excusing any inordinate delay in prosecuting the pending charges simply because of the intervening incarceration. *See, e. g., Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Fundamental fairness requires that any person—whether or not he is presently incarcerated, and whether he faces criminal charges or parole revocation—must not be subjected to an unnecessarily prolonged or indeterminate period of oppressive uncertainty which results from the pendency of unresolved charges against him. In simplest terms, an incarcerated individual, subject to charges which might result in a future deprivation of liberty, *has the right to know as soon as is practicable whether he will, in fact, be freed or reincarcerated when his current custody terminates.* On this single principle, *Moody* is absolutely irreconcilable with *Hooey* and its progeny.

This Court is also of the opinion that the *Moody* majority was wrong in its casual minimization of the effect of a detainer on current conditions of confinement. *Moody* at 88 n.9, 97 S.Ct. at 279 n.9. It has been this Court's

experience with the criminal "justice" system that detainers figure prominently in a custodial authority's exercise of "discretion" in classifying prisoners or determining parole eligibility, as well as in the prisoner's own level of incentive to participate in rehabilitative or conditional release programs. (The Court is gratified that the numerous authorities cited by Justice Stevens support this view.) These are not mere "adverse consequences" or "less agreeable" circumstances, but are material determinants of the period and quantum of lost liberty visited upon the prisoner. Any state action which brings about a deprivation of liberty— whether it be the initial incarceration due to the conviction *or the substantial incremental deprivations due to the filing of a detainer* —cannot, consistent with any sensible notion of minimum due process, be permitted to go unchecked (i. e., without a due process hearing) for any inordinate length of time.

For these reasons, were the matter, herein, presented as one of first impression, this Court would not hesitate in holding that due process requires a prompt parole revocation hearing when a parole violator's warrant is filed as a detainer with a subsequent custodian. Unfortunately, the Supreme Court has announced the contrary rule in *Moody*, with which this Court is not presently at liberty to disagree except in dicta.

that a *parole authority* does deny due process, in failing to provide a timely revocation hearing, if the revocation warrant is filed as a detainer with an intervening autonomous custodian prior to its execution. However, in reversing the *Reddin* district court on other grounds, the Seventh Circuit expressed its disapproval of that dicta by noting that the cases upon which the district court relied in making such statement had clearly been overruled by *Moody. See Reddin*, 561 F.2d at 716 n.1. Indeed, prior to its decision in *Reddin*, the Seventh Circuit had been joined by the Eighth and Tenth Circuits in unanimously holding that *Moody's* reasoning and result are equally applicable when autonomous parole authorities are involved. *Head v. United States Board of Parole*, 553 F.2d 22 (7th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977); *Hicks v. United States Board of Paroles & Pardons*, 550 F.2d 401 (8th Cir. 1977); *Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977); *Coronado v. United States Board of Parole*, 551 F.2d 275 (10th Cir. 1977); *McNeal v. United States*, 553 F.2d 66 (10th Cir. 1977). The Third Circuit subsequently agreed. *United States ex rel. Caruso v. United States Board of Parole*, 570 F.2d 1150 (3d Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978). The Court's research reveals no contrary post-*Moody* authority.[2]

The fact that petitioner's federal release revocation warrant was filed as a detainer with Ohio authorities, and the fact that there was no hearing on said warrant during the period of petitioner's Ohio custody—or at any time prior to the warrant's execution (i. e., over four years)—do not suggest any unconstitutional or illegal conduct on the part of federal authorities which might allow this Court to further inquire into the matter on application for a writ of habeas corpus or mandamus. Petitioner has, therefore, failed to state circumstances which would entitle him to such relief in this Court.

Since it plainly appears from the record, herein, that petitioner is not entitled to the relief requested, no evidentiary hearing is required. *Cf.* 28 U.S.C. fol. § 2255 Rule 8(a). Petitioner's motion for appointment of counsel is, accordingly, not well taken and is overruled. *Cf., id.* at Rule 8(c). The Charleston public defender is advised that he is relieved of the duty to represent petitioner in this Court pursuant to appointment of the West Virginia district court.

For the aforestated reasons, the petition is deemed not well taken and is, hereby, ordered dismissed.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**2.** As should be evident from the discussion in note 1, *supra*, this Court believes that *Moody* should be construed and applied in a very limited manner. Since the Sixth Circuit has not spoken on the question reserved in *Moody*, regarding *Moody's* application to actions by autonomous parole and custodial authorities, this Court is not bound to follow the positions taken by the Third, Seventh, Eighth and Tenth Circuits on that matter. However, whatever the extent of this Court's disagreement with *Moody*, once *Moody's* holding is accepted as controlling law (as it must be), the force of reason compels the conclusion that the "autonomous authorities" distinction is an artificial distinction, adherence to which would serve no other purpose than to mask substantive disagreement with *Moody's* express holding. This Court will not indulge in such devices.