Frank SACCO, Appellant,

v.

Lee C. FALKE, Prosecuting Attorney, Montgomery County, Ohio; Winston Satran, Warden, North Dakota State Penitentiary; U. S. Department of Justice; Federal Prison System, Washington, D. C., Appellees.

No. 80–2104.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1981.

Decided June 3, 1981.

Warren H. Albrecht, Jr., Bismarck, N. D., for appellant.

James R. Britton, U. S. Atty., Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D. for Appellee, Department of Justice.

Lee C. Falke, pro se; Gary W. Crim, Sp. Asst. Pros. Atty., Dayton, Ohio, for appellees.

Before LAY, Chief Judge, ROSS, Circuit Judge, and ROBINSON,* Senior District Judge.

LAY, Chief Judge.

Frank Sacco appeals from the district court's denial of his petition for habeas corpus. Sacco is a federal prisoner held in the North Dakota State Penitentiary pursuant to a contract with the federal government. In his petition Sacco alleged that Montgomery County, Ohio officials seeking to prosecute him on state charges lodged a detainer with federal officials in 1977. He claims that in 1977 he requested final disposition of the Ohio charges, but that Montgomery County failed to prosecute him within 180 days as required by the Interstate Agreement on Detainers. He therefore seeks dismissal of the Ohio indictment and the detainer, and relief from the effects of the detainer. We affirm the district court's order denying a writ of habeas corpus.

In 1977, Sacco was imprisoned at the federal penitentiary at McNeil Island, Washington. While at McNeil Island he received notice that the Montgomery Coun-

* Richard E. Robinson, Senior District Judge, District of Nebraska, sitting by designation.

ty officials had lodged a detainer. The Interstate Agreement on Detainers, to which both Ohio and the United States are parties, provides in pertinent part:

Article III.

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.... The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

. . . .

(d) . . . . If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Sacco claims that in November of 1977 he sent a letter to the Montgomery County sheriff requesting final disposition of the pending charges. He also claims that he requested that his federal caseworker at McNeil Island send the Montgomery County authorities a certificate of status, as described in Article III(a) of the Interstate Agreement.

Montgomery County prosecutors took no steps to bring Sacco to trial. In 1979, Sacco learned that the Montgomery County detainer was still on his record. In December 1979, Sacco sent the Montgomery County sheriff's office a letter discussing his status and inquiring about obtaining a nolle prosequi. After more inquiries, Montgomery County officials replied on April 22, 1980, saying that they had never received the 1977 request, and inviting Sacco to request immediate trial if he wished. Sacco responded on April 29, 1980, explaining his claim that the 180 day period had expired. Montgomery County said it would consider his letter a request for trial and would proceed within 180 days. Sacco filed this petition on May 30, 1980. Montgomery County apparently made no effort to commence trial after the petition was filed.[1]

There is considerable confusion as to the precise relief petitioner is seeking. The pro se petition seeks a writ "dismissing [the] detainer," and "relief to which he may be entitled." On appeal, Sacco's appointed counsel seeks an order declaring that the Montgomery County indictment is a nullity and should be dismissed and an order to the federal and North Dakota officials requiring them to remove the detainer from their records and relieve Sacco from its effects.

*The Legality of the Ohio Indictment.*

We first consider the Ohio indictment. We recognize that a petition for habeas corpus brought under 28 U.S.C. § 2241 may be used to address a future prosecution. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126–1127, 35 L.Ed.2d 443 (1973); *Rose v. Morris,* 619 F.2d 42 (9th Cir. 1980). *See also Estelle v. Dorrough,* 420 U.S. 534, 536 n.2, 95 S.Ct. 1173, 1175 n.2, 43 L.Ed.2d 377 (1975). However, a petitioner seeking relief from state custody by means of a federal writ of habe-

---

1. We note that the federal court in North Dakota apparently obtained jurisdiction over the Ohio respondent by virtue of his appearance without objection to jurisdiction. *Cf. Norris v. Georgia,* 522 F.2d 1006 (4th Cir. 1975).

as corpus is ordinarily required to exhaust his state remedies. *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). In *Braden*, federal relief was available only after the petitioner had unsuccessfully sought a writ of mandamus in the Kentucky Supreme Court. The Court observed:

The fundamental interests underlying the exhaustion doctrine have been fully satisfied in petitioner's situation. He has already presented his federal constitutional claim of a *present* denial of a speedy trial to the courts of Kentucky. The state courts rejected the claim, apparently on the ground that since he had once escaped from custody the Commonwealth should not be obligated to incur the risk of another escape by returning him for trial. Petitioner exhausted all available state court opportunities to establish his position that the prior escape did not obviate the Commonwealth's duty under *Smith v. Hooey*, [393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607], *supra*. Moreover, petitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum. He delayed his application for federal relief until the state courts had conclusively determined that his prosecution was temporarily moribund. Since petitioner began serving the second of two 10-year Alabama sentences in March 1972, the revival of the prosecution may be delayed until as late as 1982. A federal habeas corpus action at this time and under these circumstances does not jeopardize any legitimate interest of federalism.

410 U.S. at 491–92, 93 S.Ct. at 1127–1128.

The situation here is quite different from that in *Braden*. Petitioner urges us to declare the Ohio indictment void and thereby prevent a prosecution in Montgomery County. This is similar to the relief sought in *Wingo v. Ciccone*, 507 F.2d 354 (8th Cir. 1974), where petitioners sought to enjoin state prosecutions based on detainers. We

observed first that this would be far more disruptive of state procedures than the relief sought in *Braden*:

In denying the broad relief requested by petitioner, the District Court was undoubtedly conscious of the need to prevent perversion of the habeas corpus jurisdiction "into 'a pretrial-motion forum for [federal] . . . prisoners.'" Here, petitioner seeks no less than "the derailment of a pending state proceeding by attempt[ing] to litigate [affirmative] constitutional defenses prematurely in federal court." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973). Absent extraordinary circumstances, federal courts should not interfere with the states' pending judicial processes prior to trial and conviction, even though the prisoner claims he is being held in violation of the Constitution. *Braden, supra* at 507–508, 93 S.Ct. 1123 (Rehnquist, J., dissenting); *cf. Samuels v. Mackell*, 401 U.S. 66, 69, 73, 91 S.Ct. 764, 766, 768, 27 L.Ed.2d 688 (1971). Petitioner demands, in effect, that we now litigate his speedy trial claim and grant him the severe remedy of outright dismissal on the state charges. To do so in these circumstances, however, would be an unjustifiable federal interference with three states' judicial enforcement of their criminal laws.

507 F.2d at 357.

*See also Neville v. Cavanagh*, 611 F.2d 673, 676 (7th Cir., 1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); *Moore v. DeYoung*, 515 F.2d 437, 445–46 (3d Cir. 1975).

Second, in *Wingo* we noted that the mailing of requests to the detainer-lodging states asking for speedy trial or dismissal of the charges "cannot be deemed an exhaustion of his state remedies." 507 F.2d at 357 n.11.

■ Sacco has not exhausted his remedies in the state courts of Ohio. He concedes that he has made no effort to pursue his claims there other than writing letters to Montgomery County officials. We there-

fore do not review the legality of the Ohio indictment, or consider any relief designed to restrain the actions of the Ohio officials.[2] *See Pehler v. Schoen,* 537 F.2d 970 (8th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 503, 50 L.Ed.2d 595 (1976); *Neville v. Cavanagh,* 611 F.2d at 675–76; *Echevarria v. Bell,* 579 F.2d 1022 (7th Cir. 1978); *United States ex rel. Scranton v. New York,* 532 F.2d 292 (2d Cir. 1976); *Gilstrap v. Godwin,* 517 F.2d 52 (4th Cir. 1975); *Moore v. DeYoung,* 515 F.2d 437 (3d Cir. 1975); *McEachern v. Henderson,* 485 F.2d 694 (5th Cir. 1973). *Cf. Nelson v. George,* 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); *Dorsey v. Maschmann,* 571 F.2d 1002 (8th Cir. 1977).

*Effects of the Detainer.*

Sacco also seeks relief from any adverse effects on his federal confinement caused by the allegedly illegal detainer filed by the State of Ohio. He argues that relief of this nature is directed at the federal officials, thus obviating the need for exhaustion of state remedies. *Cf. Cooper v. Lockhart,* 489 F.2d 308 (8th Cir. 1973).[3] We need not discuss that issue or otherwise determine the merits of these claims, since they now appear to be moot. On February 24, 1981, the federal authorities in North Dakota notified Sacco by letter that they had returned a "certified indictment warrant" on Sacco to the State of Ohio. Sacco's counsel has since been informed by officials of the Federal Prison System that "this action indicated the Federal Prison System was no longer honoring the detainer placed against Mr. Sacco from Montgomery County, Ohio." Letter of April 23, 1981, at 2. Montgomery County has apparently filed another detainer, but federal officials say they "probably will not relodge the detainer." *Id.* Absent a current detainer

lodged against Sacco, we have no reason to address these claims.[4] Accordingly, the district court's order is affirmed.

---

2. At this juncture we need not determine what steps Sacco must take to exhaust his remedies in Ohio.

3. The viability of *Cooper* is somewhat questionable. *See Moody v. Daggett,* 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976); *see also Reddin v. Israel,* 561 F.2d 715, 716 n.1 (7th Cir. 1977).

4. Sacco's counsel argues that Ohio will use other methods to attempt to obtain Sacco's presence for trial, such as a writ of habeas corpus ad prosequendum. Nothing in the present record supports the likelihood of that occurrence. Sacco is free to raise his claims regarding violation of the Interstate Agreement and his right to speedy trial if and when such proceedings are initiated.