The UNITED STATES of America, Plaintiff–Appellee,

v.

Robert A. SCOTT, Defendant–Appellant.

No. 85–2182.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1988.

Decided June 24, 1988.

As Corrected June 27, 1988.

Thomas G. DiCianni, Chicago, Ill., for defendant-appellant.

William R. Hogan, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge,
CUDAHY and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

The defendant-appellant, Robert A. Scott, appeals from the district court's order revoking his probation. Scott argues that the district court erred by revoking his probation for acts that occurred prior to the beginning of the probation period and by violating his right to a speedy probation hearing. For the reasons discussed below, we affirm.

Scott's probation status arose from his conviction for delivery of cocaine. On November 23, 1982, the district court sentenced Scott to the custody of the Attorney General for two years, followed by a special parole term of eight years, and fined him $5,000. Scott also was given a suspended sentence for conspiracy to deliver cocaine and was placed on five years probation to run consecutively with his two-year prison term and concurrently with his special parole term. Scott appealed his conviction and remained free on bond until this court affirmed his conviction on February 24, 1984. After receiving a number of extensions, the district court ordered Scott to surrender on May 1, 1984. When Scott failed to appear, the district court issued a bench warrant and Scott was arrested on May 16, 1984. On May 17, 1984, Scott appeared before the district court. At that time, the government moved that Scott be held at the Metropolitan Correctional Center (MCC) pending a probation revocation hearing. The district court granted this motion in a written order on May 23, 1984.

On October 11, 1984, the government filed a motion for Scott to show cause why his probation should not be revoked based, in part, on Scott's failure to appear and Scott's involvement in a cocaine sale on April 27, 1984. The district court ordered Scott to respond to the government's mo-

tion by October 19, 1984, and set a date for hearing on October 25, 1984. On October 25, Scott filed his response and the district court ordered the government to disclose the evidence it planned to rely on at the hearing. Both parties requested additional time and a status hearing was scheduled for November 8, 1984. The hearing was delayed until November 15, 1984. Again, no hearing was held and a new status hearing was set for December 13, 1984 and then, December 27, 1984. On the 27th, the district court informed the parties that three trials were scheduled already for January, 1985 and that he would notify the parties about a new hearing date. On January 16, 1985 the district court ordered Scott to remain at the MCC until there was a hearing.

On June 18, 1985, the district court finally heard the government's revocation motion. On June 24, 1985, the district court revoked Scott's probation and reinstated the suspended five-year sentence. The district court found that Scott failed to surrender and, at the same time he sought extensions, he was involved in drug sales.

██ Scott first argues that the district court erred in revoking his probation for acts that occurred prior to the beginning of the probation period. Recently, this court rejected this argument in *United States v. Yancey*, 827 F.2d 83 (7th Cir.1987). In *Yancey*, we expressly overruled *United States v. Dick*, 773 F.2d 937 (7th Cir.1985), and held that a district court may revoke probation for a preprobation offense. *Id.* at 88. We believe Yancey was correctly decided and follow it here.

Scott argues next that he was denied his statutory and constitutional rights to a "speedy" probation revocation hearing by the thirteen-month delay between May, 1984 and June, 1985. Scott relies on Section 3653 of the Probation Act, 18 U.S.C. § 3651, *et seq.*, which was in force at the time of his arrest.[1] Section 3653 states in relevant part:

At any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant. At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period. Such warrant may be executed in any district by the probation officer or the United States marshal of the district in which the warrant was issued or of any district in which the probationer is found. If the probationer shall be arrested in any district other than that in which he was last supervised, he shall be returned to the district in which the warrant was issued, unless jurisdiction over him is transferred as above provided to the district in which he is found, and in that case he shall be detained pending further proceedings in such a district.

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

██ The district court did not violate the language of this statute. This section empowers a probation officer and the court for the district in which the probationer is being supervised to arrest, for cause, the probationer. The statute further provides that if arrested in any district other than the district in which he was supervised, the probationer shall be returned to the district that issued the warrant for his arrest, unless he is transferred to another district. If he is not transferred, the statute re-

---

1. Sections 3651–3655 recently have been repealed and replaced by 18 U.S.C. §§ 3561–3566 and §§ 3601–3607.

quires that "[a]s speedily as possible after arrest, the probationer shall be taken before the court for the district having jurisdiction over him." The "as speedily as possible" language does not necessarily relate to a revocation hearing. *United States v. Curry,* 767 F.2d 328, 329 (7th Cir.1985). Rather, the statute ensures that the probationer appear immediately before the district court that holds proper jurisdiction over him so that the process of revocation may commence. *See United States v. Daly,* 839 F.2d 598, 602 (9th Cir.1988). This particular statute, unlike Fed.R.Crim. P. 32.1, does not direct the district court or the government to do any more than that.[2] It also is unclear whether Scott's "arrest" on May 16 falls within the purview of § 3653 since he was not arrested for violating his probation but, rather, for failing to surrender to the Attorney General. *See e.g., United States v. Sackinger,* 537 F.Supp. 1245, 1248 (D.C.N.Y.1982), *aff'd,* 704 F.2d 29 (2d Cir.1983). Section 3653, by its plain language, relates only to arrests made by probation officers for violations of probation.

■ The plain language of the statute, therefore, requires that a probationer, upon arrest, be taken "speedily" before the court of proper jurisdiction to commence any revocation of probation. This was done. Scott was arrested on May 16, 1984. On May 17, 1984, Scott, along with counsel, appeared before the district court and the government moved that Scott remain at the MCC pending a revocation hearing.[3] Scott, therefore, was accorded his rights pursuant to section 3653.

Scott also contends that the thirteen-month delay violated his constitutional due process right to a "speedy" revocation hearing under the fifth amendment. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 279 (1973), the Supreme Court held that a probationer facing revocation is entitled to minimum due process. The Court reasoned that there was no "dif-

ference relevant to the guarantee of due process between the revocation of parole and the revocation of probation," and held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." *Id.* at 782, 93 S.Ct. at 1759. The Court also noted that, although the revocation of probation is not a part of the criminal prosecution, it does result in the loss of liberty and requires due process. *Id.* (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (applying minimum due process protections to parolees)). In *Morrissey,* the Court discussed what process was due parolees pending revocation. The Court noted, *inter alia,* that the "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, ... would not appear to be unreasonable." *Morrissey,* 408 U.S. at 488, 92 S.Ct. at 2603–04.

■ Under *Gagnon,* then, the fifth amendment guarantees a probationer a reasonably prompt revocation hearing. In defining how long is too long, we decline to follow an arbitrary and illogical path which would define this right based solely on the amount of time that has elapsed between arrest and a hearing. *Accord, United States v. Companion,* 545 F.2d 308, 311 (2d Cir.1976). Instead, we think the Supreme Court's decision in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), where the Court enunciated a balancing test to determine whether a defendant has been provided a speedy trial under the sixth amendment, provides the proper approach. The Court held that three factors, in addition to the length of the delay, should be weighed to determine whether there has been a constitutional deprivation: "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. Because probation proceedings are not a part of the criminal prosecution, the unique protections of the sixth amendment, *see Barker,* 407 U.S. at 519–

---

2. Rule 32.1 explicitly directs the court to hold a "prompt" preliminary hearing and a revocation hearing "within a reasonable time." Scott does not claim his revocation violates this rule.

3. The district court granted this motion in writing on May 23.

22, 92 S.Ct. at 2186–88, do not attach to probationers. Nevertheless, probationers do face the risk of incarceration and other "substantial restrictions on their liberty," *United States v. Loud Hawk*, 474 U.S. 302, 312, 106 S.Ct. 648, 654, 88 L.Ed.2d 640 (1986), the same types of restraints the speedy trial clause is supposed to protect. *Id.*[4] Thus, although the sixth amendment's speedy trial clause does not apply directly to probationers, its guarantees provide a framework for defining the contours of a probationer's right to a prompt revocation hearing.

We therefore adopt the balancing test outlined in *Barker* and apply it here to determine whether Scott has been denied his constitutional right to a prompt revocation hearing, with the following modification. In addition to the four factors laid out in *Barker*, we believe that another factor is relevant in the context of probation revocation hearings: the reason why the probationer is in custody. This modification is based upon *Moody v. Daggett*, 429 U.S. 78, 86–87, 97 S.Ct. 274, 278–79, 50 L.Ed.2d 236 (1976), where the Court recognized that when a parolee's custody derives from another conviction rather than from a parole violator warrant, the consequent liberty loss "attendant upon parole revocation" and protected in *Morrissey* is not yet triggered. *See also Doyle v. Elsea*, 658 F.2d 512, 516 (7th Cir.1981); *United States v. Saykally*, 777 F.2d 1286, 1287–8 (7th Cir.1985); Fed.R.Crim.P. 32.1. This fifth factor accounts for the present situation.

■ When applying this test to this case, we find no constitutional violation. While a thirteen-month delay gives us pause, we do not believe, under the circumstances of this case, that this delay violated Scott's constitutional due process right to a prompt revocation probation hearing.

We start with the thirteen-month delay. The government's preparation of its case for the hearing caused the delay in the first five months. While this might have been accomplished earlier, it was not unreason-

able. There is no evidence in the record or any allegations by Scott that the government delayed in bad faith or in pursuit of a tactical advantage. After *both* parties agreed to an extension of time, the district court delayed the hearing another eight months because of its calendar. Although the government did not directly cause this delay, this does not justify the delay or excuse its impact on Scott. Nevertheless, when balanced with the other factors present in this case, we do not find a constitutional harm.

Scott was arrested on May 16 because he failed to surrender and was incarcerated at that time for his 1982 conviction. The revocation of his probation did not trigger the loss of liberty caused by his imprisonment, even though, at the time, the possibility did exist that Scott would only serve two years in prison rather than eight. Arguably, the government could have lodged a warrant for Scott's arrest for a probation violation as a detainer with the Attorney General and waited until Scott was released from serving his sentence before holding a revocation hearing. This resulting "delay" would be constitutional under *Moody*, 429 U.S. 78, 97 S.Ct. 274 and *United States v. Williams*, 787 F.2d 1182 (7th Cir.1986). This case is distinguishable from *Moody* and *Williams*, however, because the government chose instead to hold Scott at the MCC pending a full revocation hearing. Although *Moody* does not control, the result is the same. Scott's incarceration at the MCC was still the result of his prior conviction for cocaine trafficking. His liberty interest in a prompt determination of his probation, while not eliminated, is nevertheless diminished.

Scott concedes that he never asserted his right to a prompt hearing. Scott knew of the government's motion to seek revocation as early as May 17, 1984, when he appeared before the district court for the first time after his arrest. At that time, Scott began serving his two-year sentence at the MCC while he awaited his hearing. Scott's

---

**4.** For this reason, probationers' due process right to a prompt revocation hearing more closely resembles the sixth amendment protec-

tions than does the right of persons facing pre-indictment delay. *See United States v. Feusting*, 845 F.2d 664 (7th Cir.1988).

failure to assert his right is especially significant in this case, where he was serving time unrelated to his probation violation. It is not unreasonable to assume that Scott may have preferred to remain at the MCC, albeit for a short period of time, rather than transfer to another facility. *See e.g. Moody*, 429 U.S. at 89, 97 S.Ct. at 279–80. Although this is speculative at best, that Scott never asserted his right is clear.

Scott maintains that he was prejudiced by the thirteen-month delay because (1) the confinement at MCC deprived him of his opportunity to gain the rehabilitative benefits of a more permanent facility and to join and adjust to a stable prison population, (2) the uncertainty caused by the delay created anxiety and concern, and (3) the delay impaired his defense.[5] None of these arguments is persuasive.[6] As the government points out, Scott had no right to be transferred from the MCC and, therefore, the amount of prejudice he may have suffered from not being transferred is minimal. Even if Scott would have been transferred and would have received rehabilitative benefits, this speculative prejudice is not constitutionally significant. *See Williams*, 787 F.2d at 1184 n. 3. Similarly, Scott's claim that he suffered anxiety from the uncertainty caused by the delay does not constitute serious prejudice. *See Reddin v. Israel*, 561 F.2d 715, 718 (7th Cir.1977). Scott knew since May 17, 1984, that the government sought the revocation of his probation because of his involvement in drug transactions. Any anxiety he may have felt probably was caused by this knowledge and the strength of the government's case, rather than any delay. Moreover, Scott also was aware that he was facing further prosecution in other federal districts for the same narcotics transactions that contributed to his probation revocation.[7] Unfortunately, anxiety and anguish are an "inevitable result of criminal prosecution," *Williams*, 787 F.2d at 1184, and imprisonment. Therefore, to show that the government's delay prejudiced him in a constitutionally significant sense, Scott must offer evidence of anxiety beyond that which reasonably corresponds with a criminal prosecution, conviction, and imprisonment. Scott also has failed to show how the delay impaired his defense at the probation revocation hearing. The only argument Scott makes is that "as [his] ties to the general community faded so did his abilities to marshall evidence on his own behalf." Nowhere does Scott give any indication of what this evidence might show or which witnesses he might have called if he were able. Rather, the record shows that Scott stipulated to some of the evidence presented against him and that he offered no additional evidence in his defense. Scott, therefore, has failed to show that the delay prejudiced him.

After balancing these factors, particularly the length of delay, the reason for Scott's incarceration, and the prejudice to Scott, we conclude that the delay in Scott's revocation hearing did not violate his right to due process. The order of the district court therefore is

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

I agree with the result and much of the analysis contained in the majority opinion. I write separately, however, since I take a different view of the interpretation of the time constraints that 18 U.S.C. section 3653

---

5. In his reply brief, Scott also maintains that "he has a due process right not to be unreasonably deprived of the Attorney General's unfettered discretion to choose the institution of his confinement to further his rehabilitation, reformation, and instruction, if the Attorney General deems it appropriate." Unlike Scott, however, we do not believe the purpose of the due process clause is to protect the "unfettered discretion" of any government agency.

6. Although these harms, standing alone, may not implicate constitutionally protected liberty interests, *Williams*, 787 F.2d at 1184 n. 3, this does not preclude them from constituting prejudice, which may be constitutionally significant under the balancing test employed here.

7. In fact, Scott was convicted and sentenced in June, 1986, in two other federal jurisdictions, to two concurrent five-year prison terms for these offenses. These sentences run concurrent with the five-year term imposed by the district court after Scott's probation revocation.

places on the revocation of probation. Scott, of course, argues that the thirteen-month delay between his apprehension and his final probation revocation hearing clearly violated the statutory command that a probationer be taken before the court "as speedily as possible after arrest." The majority, citing *United States v. Curry*, 767 F.2d 328, 329 (7th Cir.1985), and *United States v. Daly*, 839 F.2d 598, 600 (9th Cir. 1988), holds that this language of expedition merely requires that the "probationer appear ... immediately before the district court ... so that the process of revocation may commence." The majority contends that the language does not govern the time within which the revocation *hearing* must be held. But the government has not argued for this interpretation of the statute and neither *Curry* nor *Daly* expressly endorses it. Any weak inference that might be drawn from *Daly's* offhand computation of delay from the time of arrest to the time of initial appearance is undermined by *Daly's* failure to acknowledge, much less take issue with, the computation of delay from the time of arrest through the time of the revocation hearing in an earlier decision of the same court. *See United States v. Wickham*, 618 F.2d 1307, 1310 (9th Cir. 1979). Moreover, other decisions have suggested that the "as speedily as possible" requirement is intended, at least in part, to protect the probationer's ability to present a defense. *United States v. Companion*, 545 F.2d 308, 312 (2d Cir.1976); *United States v. Sackinger*, 537 F.Supp. 1245, 1248 (W.D.N.Y.1982), *aff'd*, 704 F.2d 29 (2d Cir.1983). This objective would be served weakly, at best, by a statute that required a probable cause hearing post haste, but tolerated limitless delay in convening the actual hearing. I think such a construction is extremely problematic and I would therefore pursue a different approach.

The significant language of the statute in question states:

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. *Thereupon the court may revoke the probation....*

18 U.S.C. § 3653 (emphasis supplied). This suggests that the injunction to proceed "speedily" applies to the revocation process as a whole. At least there is no suggestion that the initial appearance or an initial probable cause determination should be regarded, for purposes of the expedition requirement, as separable from the "final" revocation hearing. Whatever the discrete steps may be, the government is under an injunction to proceed expeditiously with the whole process.

This is certainly the view taken in *United States v. Companion*, which provides the most detailed reported analysis of the statute's timing requirement. There Judge Oakes found little help in the legislative history except the circumstance that the "as speedily as possible" standard was adopted in 1948 to replace the slightly more demanding requirement of "forthwith." 545 F.2d at 310. After considering various aspects of the problem, the *Companion* court applied the three critical factors of *Barker v. Wingo:* " 'the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' " *Companion*, 545 F.2d at 311 (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).

In the present case, Scott argues essentially that the thirteen-month delay is so extreme as to automatically invalidate the revocation. He also argues that he was prejudiced by having to live with the unresolved probation violation charges and by being required to spend the period awaiting the hearing in the Metropolitan Correctional Center (the "MCC") in Chicago instead of in a prison where various programs would have been available to him.

The government was directly responsible for some of the time lost and the rest was attributable to docket congestion in the district court, which is also, ultimately, the burden of the government. I think a thirteen-month delay is much too long and, prima facie, violates the statute. This statutory injunction cannot be treated cavalierly by prosecutors or district courts. But, if the defendant did not assert his rights and suffered no prejudice, even thirteen months

may not be long enough to invalidate the probation revocation. Scott's claim that the delay in resolving the charges caused him great anxiety, dubious from the outset given the circumstances of his confinement, is further weakened by his failure to request even once during his thirteen months of confinement at MCC that his hearing be expedited. Moreover, I do not believe that placement in the MCC as opposed to some other prison is grounds for a claim of prejudice. Scott's time at the MCC counted toward his sentences for other offenses, which he was obliged to serve regardless of his probation status. He had no right to be in one prison in contrast to another. Therefore, while I find the delay here most questionable and the government's explanations quite unsatisfactory, under the unusual circumstances of this case I would not hold that the delay invalidates the revocation.