**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald Herbert RASMUSSEN,
Defendant–Appellant.**

No. 88–1697.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1988.

Decided Aug. 2, 1989.

J. William Roberts, U.S. Atty., Byron G. Cudmore, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

RIPPLE, Circuit Judge.

Gerald Herbert Rasmussen appeals from the district court's order revoking his probation. The defendant entered a plea of guilty to charges that he conspired to transport and aided and abetted in the transport of stolen securities in interstate commerce. He was sentenced to one year in prison to be followed by a five-year term of probation. While still on probation, the defendant was convicted of other crimes. These additional convictions violated the terms of Mr. Rasmussen's probation and resulted in its revocation. The defendant argues that the probation revocation must be reversed because a thirteen-month delay before the revocation hearing was a denial of due process. He also submits that the denial of a request for a continuance was an abuse of discretion and that he was deprived of counsel of his choice in violation of the sixth amendment. We affirm the judgment of the district court revoking probation.

## I

## BACKGROUND

### A. *The 1984 Conviction and Resulting Probation*

On April 4, 1984, Gerald Herbert Rasmussen entered a plea of guilty in the United States District Court for the Central District of Illinois to conspiring to transport forged securities in interstate commerce in violation of 18 U.S.C. § 371 and to aiding and abetting in the transport of forged securities in violation of 18 U.S.C. § 2 and § 2314 (Case No. 84–30028). On April 5, 1984, he was sentenced to a one-year term of imprisonment on the conspiracy count. On the aiding and abetting count, he received a suspended sentence and was placed on a five-year term of probation to commence at the expiration of any parole term on the conspiracy count. On May 14, 1985, the supervision of defendant's probation was transferred to the Northern District of Illinois.

The terms of Mr. Rasmussen's probation included, *inter alia:* 1) refraining from violation of any law; 2) associating only with law-abiding persons and maintaining reasonable hours; 3) remaining within the judicial district unless receiving permission of the probation officer; and 4) not possessing or transferring any firearm or ammunition. R.8 at 2.

### B. *The Events of February 14, 1987 and the Resulting Charges and Probation Action*

On February 14, 1987, while still on probation, Mr. Rasmussen was arrested for speeding in the Western District of Missouri. At the time he was stopped, Mr. Rasmussen, who had a license bearing a fictitious name, was accompanied by three convicted felons. R.8 at 2. A search of his trunk revealed that Mr. Rasmussen was in possession of a "loaded .357 Cop stainless

---

* The Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, is sitting by designation.

steel derringer (four barrel) and a 12 gauge Mossberg pump shotgun (assault type having a pistol grip)." *Id.* He advised the arresting state trooper that he was traveling to Texas. Four days after the arrest, a probation officer filed a petition for probation action with the United States District Court for the Central District of Illinois alleging that Mr. Rasmussen had violated the terms of his probation by participating in these activities.

The events of February 14 also led to a federal indictment. On May 14, 1987, in the United States District Court for the Western District of Missouri, Mr. Rasmussen entered a plea of guilty to an indictment charging him with being a convicted felon in possession of firearms (Case No. 87–03064–01–CR–S–4). R.10 at 2. Also on May 14, a two-count information (Case No. 87–03130–01–CR–S–4) was filed in the Northern District of Indiana. Count 1 charged the defendant with mail fraud and Count 2 charged him with making a false statement to a licensed firearm dealer. On May 20, 1987, the Indiana case was transferred to the Western District of Missouri pursuant to Rule 20(a) of the Federal Rules of Criminal Procedure [1] and, eight days later, Mr. Rasmussen entered a guilty plea on both counts. In July of 1987, Mr. Rasmussen was sentenced to five years for each of the three offenses with the sentences to run concurrently. R.10 at 2.

On July 8, 1987, a detainer was lodged against Mr. Rasmussen based upon the petition for probation action.

## C. *The Revocation of Probation*

Six months later, in January 1988, the defendant contacted the government and requested resolution of the probation revocation charges. In February, the district court for the Central District of Illinois set a formal hearing date of March 14, 1988. A docket entry dated February 10, 1988 indicated that all parties had been notified of the hearing by mail.

On March 8, 1988, an addendum to the petition for probation action was filed. This addendum advised the district court of the disposition of the Missouri-based charges and also alleged, as grounds for the revocation of probation, the Indiana-based charges that had been transferred to Missouri. These latter charges had not been alleged in the original petition for revocation of probation. On March 9, 1988, the defendant's attorney, Allan A. Ackerman, filed a motion to continue the probation revocation hearing for six weeks on the ground that he had not had a chance to prepare adequately for the proceedings.[2] R.14. This motion was denied the following day. On March 14, Howard Feldman, an attorney also retained by the defendant, appeared before the district court and renewed Mr. Ackerman's motion for a continuance. The district court offered a continuance until later the same day, but, after determining that the revocation would be handled as a bifurcated matter (revocation first and later a separate sentencing hearing), the defendant and Mr. Feldman declined the court's offer and decided to pro-

---

1. Rule 20(a) of the Federal Rules of Criminal Procedure provides:

 (a) Indictment or Information Pending. A defendant arrested, held, or present in a district other than that in which an indictment or information is pending against that defendant may state in writing a wish to plead guilty or nolo contendere, to waive trial in the district in which the indictment or information is pending, and to consent to disposition of the case in the district in which that defendant was arrested, held, or present, subject to the approval of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States attorneys, the clerk of the court in which the indictment or information is pending shall transmit the papers in the pro-

ceeding or certified copies thereof to the clerk of the court for the district in which the defendant is arrested, held, or present, and the prosecution shall continue in that district.

2. Mr. Ackerman subsequently claimed that he did not receive the addendum before he filed for the continuance. In an affidavit in support of the motion to continue, Mr. Ackerman also alleged that he had been unable to prepare for the hearing as he had "done almost nothing other than prepare for [another] jury trial" since the beginning of January. R.15 at 1. On March 3, 1988, eleven days before the probation revocation hearing, the other jury trial came to an end when Mr. Ackerman's client elected to accept the government's plea offer. *Id.* at 2.

ceed immediately. R.25 at 13–15. Mr. Feldman argued that the thirteen-month delay between the original petition for probation action and the hearing date was unreasonable. However, the district court determined that the delay was not unreasonable, noting that the question of reasonableness under Rule 32.1 of the Federal Rules of Criminal Procedure is dependent on the surrounding circumstances of each individual case. The district court revoked the defendant's probation and set sentencing for March 29, 1988.

On March 29, the defendant appeared again with retained counsel Feldman. Attorney Ackerman was not present for sentencing and no reason was given for his absence. The district court heard the arguments of counsel and imposed a ten-year sentence to run consecutively to the five-year sentence imposed by the federal court in Missouri. A timely notice of appeal was filed on April 7, 1988.

## II

### DISCUSSION

Mr. Rasmussen asks that we focus on two time periods. He asks that we hold that the thirteen-month delay from February 18, 1987 (when the United States Probation Office filed a notice of probation action) until March 10, 1988 (when the district court held a hearing on the petition to revoke the probation) amounts to an inexcusable delay that justifies our vacating the revocation of his probation. Secondly, he asks that we examine the probation revocation proceedings and conclude that the district court deprived him of the right to counsel of choice in violation of the sixth amendment. He also submits that, by denying him a continuance, the district court deprived him of due process of law. We shall address each of these contentions separately.

### A. *The Thirteen–Month Delay*

As both parties acknowledge, this court's decisions in *United States v. Scott*, 850 F.2d 316 (7th Cir.1988), and *United States v. Williams*, 787 F.2d 1182 (7th Cir. 1986), provide the principal guidance in this circuit with respect to the matter of delay in disposing of probation revocation petitions. *Scott* squarely holds that, in assessing the impact of delay on the substantial rights of the probationer, we are to be guided by what Judge Oakes has termed the "somewhat analogous context of the Sixth Amendment right to speedy trial." *United States v. Companion*, 545 F.2d 308, 311 (2d Cir.1976).[3] In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that the following factors ought to be weighed in assessing the significance of a delay: 1) length of delay; 2) reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192. To these factors, *Scott* adds, in an effort to tailor the inquiry to the unique circumstances of probation revocation, another factor: the reason why the probationer was in custody. 850 F.2d at 320.

In applying this analysis to the case before us, our starting point is the length of the delay. A thirteen-month delay must, as Chief Judge Bauer wrote in *Scott*, "give[ ] us pause." *Id.* It requires that our scrutiny of the remaining factors be a demanding one. When we turn to the remaining factors, it becomes quite evident that, at least on this record, the factual inquiry necessary for the assessment of each overlaps significantly. Therefore, our

---

**3.** In *Companion*, Judge Oakes employed the factors from *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), in interpreting the probationer's statutory right under 18 U.S.C. § 3653 which he suggested controlled the issue of delay in providing a probationer a hearing on a revocation petition. *Companion*, 545 F.2d at 311; *see also Scott*, 850 F.2d at 322 (Cudahy, J., concurring). In *Scott*, this circuit read the statute as simply ensuring "that the probationer appear immediately before the district court that holds proper jurisdiction over him so that the process of revocation may commence." 850 F.2d at 318–19. Nevertheless, as noted in the text, in dealing with *Scott's* due process claim, Chief Judge Bauer relied on the *Barker* factors. *Scott*, 850 F.2d at 320. Therefore, regardless of any difference of opinion on the scope of section 3653, there is agreement on the applicable standard.

analysis of each factor necessarily must overlap with our analysis of the others. Consequently, a chronological assessment of the proceedings is most appropriate.

At the outset, it must be noted that the probation authorities fulfilled their initial responsibilities most expeditiously. A petition for probation action was filed four days after Mr. Rasmussen was arrested in Missouri. Mr. Rasmussen and his attorneys therefore had notice, actual or constructive, of the United States Probation Office's intentions throughout the disposition of the Missouri- and Indiana-based charges. It certainly was not unreasonable to postpone action on the probation revocation petition until after the disposition of the Missouri-based charges. Since some of the alleged probation violations were based on those charges, the result of the Missouri criminal trial, if it resulted in a finding of guilty, would "conclusively establish the probation violation." *Carchman v. Nash,* 473 U.S. 716, 731, 105 S.Ct. 3401, 3409, 87 L.Ed.2d 516 (1985).[4] Moreover, throughout that period, Mr. Rasmussen made no demand for resolution of the probation revocation petition.[5] Immediately after the disposition of those charges through the entry of a judgment of conviction and sentence, a detainer[6] was lodged against Mr. Rasmus-

sen that made it clear that the probation revocation matter still was pending.

The delay between the filing of that detainer in July 1987 and Mr. Rasmussen's request that the matter be resolved in January 1988 is, of course, the most problematic portion of the period. The government quite frankly admits that its inaction was due to the reassignment of the case from a departing government attorney to a colleague—hardly, standing alone, an acceptable reason for a six-month delay. Government's Br. at 19. It is important to note, however, that, during that period, Mr. Rasmussen's incarceration was not attributable principally to the alleged probation violation. Rather, it was due to the sentence of confinement imposed by the federal court in Missouri. It is also significant that, throughout this time, Mr. Rasmussen made no demand for resolution of these charges. As the Supreme Court has explicitly noted, once a probationer is convicted of an offense that will constitute a probation violation, " 'the only remaining inquiry is whether continued release is justified notwithstanding the violation. This is uniquely a "prediction as to the ability of the individual to live in society without committing anti-social acts." In making this prophecy, a [probationer's] record can perhaps be one of the most significant

---

**4.** While we need not resolve definitively the issue here, we note that leading commentators suggest that, "[t]hough there is some limited authority to the contrary, virtually all jurisdictions take the position that [an] acquittal does not bar proof of that crime at the revocation hearing and revocation on the basis of that proof." 3 W. LaFave & J. Israel, Criminal Procedure § 25.4 (1984 & Supp.1988) (footnotes omitted).

**5.** Standard 18–7.5 of the American Bar Association Standards for Criminal Justice, in pertinent part, states that:
> (f) When the disputed violation in a revocation proceeding solely relates to the commission of another crime, the final hearing ordinarily should not be held before the disposition of that criminal charge. However if probable cause is shown at the preliminary hearing that the probationer has committed another crime, the court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge if it finds that confinement is necessary to protect the public from

further criminal activity by the offender. If the probationer is so detained, the court should promptly conduct a final hearing *upon the request of the probationer....*

3 ABA Standards for Criminal Justice § 18–7.5 (2d ed. 1986) (emphasis added). The comments discussing the Standard state that the revocation hearing may be stayed. The comments further state that, if "the probationer is detained, such a stay may be inappropriate and the detained probationer should have the *right to require* a prompt final revocation hearing." *Id.* at 18–535 (emphasis added). Both the language of the Standard and the comments indicate that it is the responsibility of the probationer to *request* a prompt hearing. In this case, Mr. Rasmussen did not request a final hearing until January 1988.

**6.** "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985).

factors.'" *Nash,* 473 U.S. at 733, 105 S.Ct. at 3410 (quoting *Moody v. Daggett,* 429 U.S. 78, 89, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972))). "'Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate—at the expiration of the [probationer's] intervening sentence.'" *Nash,* 473 U.S. at 733, 105 S.Ct. at 3410 (quoting *Moody,* 429 U.S. at 89, 97 S.Ct. at 279). As the Supreme Court noted in *Nash,* "the decision whether to request expeditious disposition [of a probation-violation charge] lies with the prisoner, and there are circumstances under which the prisoner may have a legitimate interest in obtaining prompt disposition of a probation-violation charge underlying a detainer." 473 U.S. at 733, 105 S.Ct. at 3410.

When Mr. Rasmussen requested disposition of the probation revocation petition in January 1988, both the government and the district court proceeded to dispose of the matter with a dispatch commensurate with other judicial business pending before the court. In his brief, Mr. Rasmussen asserts, in conclusory fashion, that he was harmed specifically by the delay because, at some unspecified date, presumably in February 1988, the Parole Commission considered his release date on the Missouri- and Indiana-based charges without the benefit of a definitive resolution of the probation matter. However, no representation is made to us that the district court was apprised of the pendency of this matter. In any event, we believe that, had the effect of the detainer on the outcome of this parole hearing been a matter of concern to Mr. Rasmussen, he should have demanded disposition of the probation revocation petition before his January 1988 request.

Finally, we are constrained to note that, had the district court believed that Mr. Rasmussen had suffered any prejudice by the delay, that prejudice could have been cured by the court's ordering that the sentence imposed on revocation of the probation be retroactively concurrent with the sentence imposed by the Missouri federal court. *See Williams,* 787 F.2d at 1184.

Accordingly, Mr. Rasmussen is not entitled to any relief because of the delay in disposing of the petition to revoke his probation.

## B. *The Denial of a Continuance*

Mr. Rasmussen also contends that the district court erred when it denied a request that it grant a continuance to permit the attendance of an attorney whom he had retained. In reviewing a district court's ruling on a continuance, the standard is clear:

> A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion. This issue must be decided on a case by case basis in the light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied.

*United States v. Manos,* 848 F.2d 1427, 1434 (7th Cir.1988) (quoting *United States v. Uptain,* 531 F.2d 1281, 1285–86 (5th Cir. 1976) (citations omitted)); *accord United States v. Zambrana,* 841 F.2d 1320, 1326– 27 (7th Cir.1988); *Estock v. Lane,* 842 F.2d 184, 189 (7th Cir.1988); *United States v. Bush,* 820 F.2d 858, 860 (7th Cir.1987).

When Mr. Ackerman first filed his motion for a continuance, he alleged that, because he was involved in a trial that had taken all of his time from January through March 3, 1988, he had not had adequate time to prepare Mr. Rasmussen's defense for the revocation hearing. In *Zambrana,* this court adopted "the list of factors set forth in *Uptain* as 'highly relevant' when a court considers whether to grant or deny a motion for a continuance based on an allegation that the defendant had inadequate time to prepare his defense." 841 F.2d at 1327. The following are some of the factors deemed relevant: "'the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective

preparation time, the degree of complexity of the case, ... the adequacy of the defense actually provided at trial, [and] the skill and experience of the attorney....' " *Zambrana*, 841 F.2d at 1327 (quoting *Uptain*, 531 F.2d at 1286–87 (footnotes omitted)); *accord Bush*, 820 F.2d at 860.

In this case, we must assess these factors in light of Mr. Rasmussen's contention that the continuance was necessary in order to permit him to proceed with the services of retained counsel of his choice. In *Mempa v. Rhay*, 389 U.S. 128, 137, 88 S.Ct. 254, 258, 19 L.Ed.2d 336 (1967), and again in *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), the Supreme Court held that a probationer is entitled to be represented by appointed counsel at a combined revocation and sentencing hearing. In *Gagnon*, the Court adopted a more flexible approach in a case where sentencing is not part of the procedure.

 Here, the government does not contest that Mr. Rasmussen had the right to be represented by retained counsel. It must be remembered, however, that, even when a person has the right to counsel whom he has chosen and retained, "[t]his right is not absolute, but qualified, and must be balanced against the requirements of the fair and proper administration of justice." *United States v. Micke*, 859 F.2d 473, 480 (7th Cir.1988); *accord Kleba v. McGinnis*, 796 F.2d 947, 952 (7th Cir.1986); *United States v. O'Malley*, 786 F.2d 786, 789 (7th Cir.1986). " '[W]here the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial, the court may require the defendant to secure other counsel.' " *Kleba*, 796 F.2d at 952 (quoting *United States v. Cicale*, 691 F.2d 95, 106 (2d Cir. 1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983) (quoting *Ungar v.

*Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)).

 In applying the foregoing principles to the factual setting contained in this record, we begin by noting that Mr. Ackerman's January 1988 letter alerted the government that Mr. Rasmussen wanted the hearing held as soon as possible. The hearing was set and Mr. Ackerman received notice that allowed him over a month to prepare. R.15 at 1; R.25 at 4. At the time he received notice of the hearing, Mr. Ackerman was already involved in the litigation that he claims made it necessary to continue Mr. Rasmussen's hearing. R.15 at 1. Nevertheless, he did not notify the court at that time that he had a conflict in scheduling but waited a full month before requesting from the court six additional weeks to prepare for the revocation hearing. That request was made on March 9, just five days before the scheduled hearing. At the hearing, Mr. Rasmussen's other retained counsel, Howard Feldman, renewed the motion for continuance. The district court noted that Mr. Ackerman had been given a month's notice of the hearing date but had waited until five days before the hearing to file for a continuance. It also noted that the continuance would add a good deal of administrative effort on the part of the government and require housing Mr. Rasmussen in a local jail for the duration of the proceedings. On those grounds, the court denied the motion for a continuance. Nevertheless, it took two steps to mitigate any prejudice to Mr. Rasmussen. First, it offered to postpone the proceedings until the afternoon to permit Mr. Feldman additional time to confer with his client. Second, it confirmed that it planned to address only the matter of probation revocation that day; it would postpone the matter of sentencing. Upon the district court's confirming that the sentencing issue would not be taken up that day, Mr. Feldman elected to continue immediately. He presented a brief and argued the issue of delay discussed earlier in this opinion. The sentencing hearing was held on March 29, 1988, providing two more weeks in which a defense could have been prepared for Mr. Rasmussen. Mr. Ackerman

was not present at the sentencing hearing. There was no request for a continuance in order to permit his presence and, indeed, Mr. Feldman affirmatively acknowledged that he was counsel of record "in place of Mr. Ackerman."

We have reviewed the entire record of these proceedings. The record simply will not support a determination that the district court engaged in "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Slappy*, 461 U.S. at 11–12, 103 S.Ct. at 1616–17 (quoting *Ungar*, 376 U.S. at 589, 84 S.Ct. at 849). The district court, while understandably firm, was measured in its response. It heard counsel's explanation; it weighed the benefits and the burdens of granting a continuance; it offered a slight postponement; it proceeded only with that part of the proceeding which required less preparation and participation by counsel. *See Gagnon*, 411 U.S. at 781, 93 S.Ct. at 1759.

The postponement of the sentencing phase of the proceedings is especially important in assessing the possibility of prejudice to Mr. Rasmussen. The issue of revocation was relatively straightforward. Mr. Rasmussen had already been convicted of the Missouri- and Indiana-based firearms and mail fraud charges. These convictions alone allowed the district court to revoke his probation. Indeed, at the close of the revocation hearing, Mr. Feldman stated that "I think most of our argument or Mr. Ackerman's argument will be made at the next hearing [the sentencing hearing]." R.25 at 33. Even Mr. Feldman apparently believed that the real issue was not whether the probation would be revoked, but what sentence would be imposed. Yet, there was no claim that Mr. Rasmussen was prejudiced by the timing of the sentencing hearing. The record reflects that Mr. Feldman presented reasoned argument based on a professionally adequate understanding of the record at both the revocation hearing and the sentencing. Mr. Rasmussen was not denied his right to counsel.

## Conclusion

We must conclude that neither the delay in commencing the probation revocation proceedings nor the conduct of those proceedings affords Mr. Rasmussen a basis for relief from the judgment of the district court. Accordingly, that judgment is affirmed.

AFFIRMED.