**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-2444

———————

UNITED STATES OF AMERICA

v.

COSME OIDAC
a/k/a Cosme Ordaz

Cosme Oidac
Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 92-cr-00048-2)
District Judge: Honorable Jan E. DuBois

———

Argued on June 19, 2012

Before: AMBRO, VANASKIE, and VAN ANTWERPEN, Circuit Judges

(Opinion Filed:  July 9, 2012)

Keith M. Donoghue **[ARGUED]**
Robert Epstein
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut St.
Philadelphia, Pennsylvania 19106
          *Counsel for Appellant*

Richard P. Barrett
Paul G. Shapiro **[ARGUED]**
United States Attorney's Office
615 Chestnut Street

Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

————

OPINION OF THE COURT

————

VAN ANTWERPEN, Circuit Judge.

Cosme Oidac appeals the District Court's imposition of a 24-month sentence for having violated the terms of his supervised release. Oidac contends that his due process rights were violated by the District Court's delay in holding the revocation hearing, and that the sentence was based on a factual error and thus procedurally unreasonable. We will affirm.

I.

On February 5, 1992, Oidac was indicted for offenses related to cocaine trafficking, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860(a). In proceedings before the Honorable Judge Jan DuBois, Oidac pled guilty and was sentenced to 81 months in prison and 5 years of supervised release. The terms of the supervised release prohibited Oidac from (a) committing a federal, state, or local crime; (b) using any unlawful narcotics; and (c) associating with persons engaged in criminal activity. Oidac served the full 81-month sentence, and on April 13, 1998, was released.

In October and December of 1998, Oidac failed three urine tests. Three of the tests detected marijuana, and two detected cocaine. In addition to using drugs, Oidac became involved with a criminal conspiracy to sell cocaine, for which he was arrested on

2

January 17, 1999. On February 24, 1999, the U.S. Probation Office filed a petition with Judge DuBois to revoke Oidac's supervised release. The petition alleged that Oidac violated the terms of his release by (a) committing a crime, (b) failing the urine tests, and (c) knowingly associating with individuals engaged in a criminal conspiracy. On March 4, 1999, Judge DuBois ordered that a warrant be lodged as a detainer at the correctional facility where Oidac was located.

In December 1999, after a two-week trial before the Honorable Judge Anita Brody, a jury convicted Oidac on one count of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of using a communication device in furtherance of the conspiracy, in violation of 21 U.S.C. § 843(b). It was not until 2004, however, that Oidac was sentenced. On March 11, 2004, Judge Brody sentenced Oidac to 360 months in prison. As the government notes in its brief, the more than four-year gap between Oidac's conviction and sentence was "caused in part by a litany of [Oidac]-initiated *pro se* motions, requests to continue sentencing dates, and disagreements with court-appointed attorneys." Gov't Br. at 9.

On March 17, 2005, we affirmed Oidac's conviction but remanded the sentence for sentencing proceedings consistent with *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Ordaz*, 398 F.3d 236, 239 (3d Cir. 2005). Pursuant to our remand, Judge Brody conducted resentencing proceedings that resulted in Oidac's sentence being reduced from 360 to 298 months. On April 16, 2007, we affirmed this sentence. *United States v. Ordaz*, 227 F. Appx. 170, 172 (3d Cir. 2007). After the Supreme Court denied certiorari on October 1, 2007, Oidac commenced habeas proceedings in which he

3

collaterally attacked both the sentence and conviction. These habeas claims were denied

on February 28, 2011. Three months later, on May 24, 2011, Judge DuBois held a

revocation hearing to determine if Oidac had violated the terms of his release. At the

hearing, Oidac argued that he had been wrongfully convicted of the 1999 drug charges.

He admitted, however, to the legal fact of the conviction and admitted that the 1998 urine

tests were accurate.

At the end of his allocution, Oidac asked Judge DuBois, "Isn't there some kind of

limitation from '99 to this point, because I have been asking to be brought before you

from 2004 and I have never been brought over." App. at 53. Judge DuBois responded:

> The answer to the question about bringing you before me on the petition for
> supervised release is basically that until your conviction, you had not violated that
> provision of supervised release. So you had to be convicted by the jury. But once
> that happened and you began to file appeals, the Government is permitted to delay
> in having this hearing as they did. There's nothing improper about that. It matters
> not that this hearing is held in 2011 as opposed to a time shortly after your
> conviction on December 23, 1999.

*Id.* at 53–54.

After Oidac completed his allocution, Oidac's attorney argued that imposing

additional incarceration would be unnecessary and duplicative in light of Judge Brody's

sentence. In response, Judge DuBois asked: "How does that address the purpose of

sentencing for a violation of supervised release, which is incremental punishment? Right

now, he was sentenc[ed] as though he were not under supervision at the time he

committed the crimes charged in the Brody case." *Id.* at 56. Oidac's attorney replied

that, although he was not present at the sentencing hearing, he was "certain" Oidac's

supervised release violation had been considered.

4

Following this exchange, Judge DuBois imposed a below-Guideline[1] sentence of 24 months, to be served consecutively to the 298-month sentence imposed by Judge Brody.   In justifying this sentence, Judge DuBois stressed the need for "incremental punishment" and noted again his understanding that Judge Brody had not given "any consideration . . . to the fact" that Oidac was under supervised release at the time he committed the offense. *Id.* at 62.

In his timely appeal, Oidac challenges Judge DuBois's sentence on two grounds. First, he argues that the 12-year delay between his violation of supervised release and the revocation hearing violated the Due Process Clause of the U.S. Constitution as well as Rule 31.2 of the Federal Rules of Criminal Procedure.[2]   Second, he argues that Judge DuBois committed procedural error by basing the sentence on an allegedly erroneous fact: that Judge Brody had not given "any consideration" to his violation of supervised release.

II.[3]

We exercise plenary review over alleged violations of the Constitution and Federal Rules of Criminal Procedure.  *See United States v. Battis*, 589 F.3d 673, 677 (3d Cir. 2009); *United States v. Bertoli*, 40 F.3d 1384, 1397 (3d Cir. 1994).  Criminal sentences,

---

[1] As set forth by the Guidelines revocation table at U.S.S.C. § 7B1.4, the undisputed sentencing range was 46 to 57 months.
[2] *See* Fed. R. Crim. P. 32.1(b)(2) ("Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction.").
[3] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e).  We have subject matter jurisdiction pursuant to 18 U.S.C. §§ 1291 and 3742.

by contrast, are reviewed for reasonableness.[4] *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable if it is based on a clear factual error. *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc).

III.

**A.    Due Process Claim[5]**

Hearings to revoke supervised release, like hearings to revoke parole, are not criminal prosecutions. *United States v. Santana*, 526 F.3d 1257, 1259 (9th Cir. 2008); *United States v. Tippens*, 39 F.3d 88, 89 (5th Cir. 1994). Accordingly, the "full panoply of rights" that attach during a criminal trial, including the Sixth Amendment's guarantee of a "speedy trial," do not attach to revocation proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Revocation proceedings do infringe on conditional liberty interests, however, and thereby trigger some, albeit limited, protections under the Due Process Clause. *Morrissey*, 408 U.S. at 484; *Tippens*, 39 F.3d at 90; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 788 (1973) (stating that due process in the revocation context "is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed").

One due process right triggered by revocation proceedings is the right to have the revocation hearing within a "reasonable time after the parolee is taken into custody." *Morrissey*, 408 U.S. at 488. This right has been codified in Rule 32.1 of the Federal

---

[4] The government argues that Oidac did not preserve any of the claims presented in this appeal, and therefore that our review should be limited to plain error. Because this argument has no bearing on the outcome of this case, we will not address it here.
[5] Since Oidac's statutory claim under Rule 32.1 is essentially the same as his due process claim, our due process analysis is sufficient to resolve both claims.

6

Rules of Criminal Procedure, which requires that courts "must hold the revocation hearing within a reasonable time." Fed. R. Crim. P. 32.1(b)(2). In interpreting this right, courts look to the "somewhat analogous context of the Sixth Amendment right to speedy trial."[6] *United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989) (quoting *United States v. Companion*, 545 F.2d 308, 311 (2d Cir. 1976)). Speedy trial claims under the Sixth Amendment are assessed by weighing the following factors: (1) length of the delay, (2) reason for the delay; (3) the defendant's assertion of his right, and (4) prejudice. *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972).

**Factors (1) and (2): Length of, and Reason for, the Delay**

Here, the factor that weighs most strongly in Oidac's favor is the length of delay. As Oidac notes, "[c]ourts have been seriously troubled by delays in revocation proceedings of far shorter than 12 years."[7] Nevertheless, a long delay is not sufficient by itself to establish a Due Process violation if the other *Barker* factors do not weigh in the petitioner's favor. *See Barker*, 407 U.S. at 533 ("We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."). Although we are troubled by the absence of a clear reason to justify delay

---

[6] Due to the "significant differences" in the constitutional import of delays in the pre-trial and post-conviction contexts, *Heiser v. Ryan*, 15 F.3d 299, 305 (3d Cir. 1994), "Speedy Trial Clause authority should not be applied in revocation proceedings as if it were directly controlling." *Santana*, 526 F.3d at 1261.

[7] In *Rasmussen*, for example, the Seventh Circuit noted that a 13-month delay in holding a revocation hearing "requires that our scrutiny of the remaining factors be a demanding one." 881 F.3d at 398.

7

during the last seven of the twelve years at issue,[8] the remaining factors weigh in favor of the government.

**Factor 3: Oidac's Assertion of His Right**

The Supreme Court has stated that "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight," and that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 531–32. Here, there is scant evidence that Oidac asserted his right to a reasonably prompt hearing. The only evidence Oidac cites is his statement to Judge DuBois at the revocation hearing that "I have been asking to be brought before you from 2004 and I have never been brought over." Oidac argues that, if he was not telling the truth about these prior requests, Judge DuBois or the government would have corrected him at the hearing, and thus, "[t]he judge's and prosecutor's silence" provided "independent support for the veracity" of his account. Reply Br. at 4–5. This argument strains credulity. As the government points out, Oidac was no stranger to filing written *pro se* requests throughout the entirety of his proceedings before Judge Brody. The absence of docket entries and written requests to Judge DuBois suggests none were made here. Although Oidac's counsel speculates that the lack of documentation *could* be the result of Oidac's

---

[8] We refer here to the seven years following Judge Brody's imposition of sentence in March 2004. *Cf. United States v. Poellnitz*, 372 F.3d 562, 571 (3d Cir. 2004) ("[I]t was reasonable for the District Court to wait for the adjudication of the state court charges before proceeding with the revocation hearing."). Even if the government is correct that Oidac substantially contributed to this seven-year delay through excessive *pro se* filings challenging his conviction and sentence, any such *pro se* filings would not have prevented the District Court from holding a revocation hearing.

case file being destroyed, neither Oidac's counsel nor Oidac himself actually assert that written requests were filed.

**Factor 4: Prejudice**

Irrespective of how we weigh the aforementioned factors, Oidac's due process claim must ultimately fail because the delay did not prejudice him. The Supreme Court has identified three ways that persons can be actually prejudiced by violations of their Sixth Amendment right to a speedy trial: (1) impairment of their ability to contest the charges; (2) infringement of their liberty interest against unnecessary incarceration; and (3) infliction of mental anxiety by being kept in legal limbo. *Barker*, 407 U.S. at 532. None of these interests is implicated here.

First, there is no evidence to show that the delay prejudiced Oidac's ability to contest the charges. *See United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996) ("[T]he defendant's due process concerns about delay come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation."). Indeed, Oidac readily admits he was convicted of a crime that was upheld on appeal and that he violated the terms of his supervised release by using cocaine and marijuana.

Second, the revocation proceeding did not infringe on Oidac's liberty interest against excessive incarceration because he was in custody as a result of his drug conviction, not the revocation warrant. This is critical because, in the revocation context, the Supreme Court has made clear that "when a parolee's custody derives from another conviction rather than from a parole violator warrant, the consequent liberty loss 'attendant upon parole revocation' . . . is not yet triggered." *United States v. Scott*, 850

9

F.2d 316, 320 (7th Cir. 1988) (discussing *Moody v. Daggett*, 429 U.S. 78, 86–87 (1976)). In the revocation context, therefore, we must consider "the reason *why* the probationer was in custody." *Rasmussen*, 881 F.2d at 398 (emphasis added); *see also United States v. Chaklader*, 987 F.2d 75, 77 (1st Cir. 1993) (finding "no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator"). Since Oidac never spent a single day in custody as a result of his supervised release violation, his interest against unnecessary incarceration had not been triggered prior to the revocation hearing.

Third, although Oidac's attorney talks in general, hypothetical terms about the anxiety that Oidac *may* have experienced as a result of being kept in limbo, we have previously stated that "only unusual or specific problems of personal prejudice will satisfy the *Barker* test." *Heiser*, 15 F.3d at 305. Since Oidac has produced no evidence of any "unusual or specific" manifestations of anxiety, this form of prejudice clearly does not apply.

Even if actual prejudice cannot be demonstrated, Oidac argues that the delay was so long that prejudice should be *presumed*. *See Doggett v. United States*, 505 U.S. 647, 655 (1992) ("[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim."). Oidac's argument, however, is unconvincing. While courts have presumed prejudice from lengthy delays in the Sixth Amendment context, *e.g.*, *Doggett*, 505 U.S. at 655–56; *Battis*, 589 F.3d at 683, no federal court has ever presumed prejudice from delays in revocation hearings. *See, e.g., Santana*, 526 F.3d at 1261 ("[W]e apply our ordinary test in supervised release revocation cases and search for actual prejudice.").

Although this Court has "not foreclose[d] entirely the possibility that a situation may arise where the court may presume prejudice in a post-conviction delay context," *Heiser*, 15 F.3d at 304, the compelling circumstances that would justify such a presumption are not present here. As noted above, Oidac never spent a single day in prison as a result of the revocation warrant;[9] he admits he violated the terms of his supervised release; he can point to no convincing scenario by which the delay may have compromised his ability to obtain leniency;[10] and there is no evidence, other than Oidac's self-serving, last-minute testimony, that he ever asserted his right to a speedier proceeding. We are not prepared to presume prejudice based on these facts.

## B.    Procedural Error Claim

We turn now to Oidac's argument that the District Court committed procedural error in crafting the sentence. A district court commits procedural error when it bases the sentence on "clearly erroneous facts." *Gall*, 552 U.S. at 51. A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing body on the entire

---

[9] Although Oidac notes that the detainer may have impacted his rights and security classification as a prisoner, the Supreme Court has indicated that such an effect does not necessarily trigger constitutional scrutiny. *See Moody*, 429 U.S. at 88 n.9 ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.").

[10] Oidac's counsel sets forth the following scenarios: "Perhaps Mr. [Oidac], had he not already been locked away for 12 years, would still have been close enough with a free friend or relative to have someone come to court to ask for lenience on his behalf. Perhaps Mr. [Oidac] would have made a more favorable impression himself had he not been made to endure a bitter seven years waiting to be heard, or had he displayed the energy of a younger man. Perhaps he could have been represented by the attorney who handled the original 1992 prosecution, who might have better known what chord to strike with the judge." Br. at 23.

evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Lopez*, 650 F.3d 952, 966 (3d Cir. 2011).

Here, Oidac argues that Judge DuBois committed procedural error by relying on "the clearly erroneous 'fact' that [Oidac's] status as a supervised releasee had no impact on the sentence imposed by Judge Brody." Br. at 26. The government counters by arguing that Judge DuBois's assertion that Judge Brody had not given "any consideration" to Oidac's releasee status was not an erroneous statement of fact, but a correct statement of law. According to the government, sentencing judges consider violations of supervised release in order to calculate a defendant's criminal history, per U.S.S.G. § 4A1.1(d), while revocation hearing judges consider violations to sanction a releasee for his "breach" of the court's "trust," per U.S.S.G. § 7 Pt. A. The government asks us, therefore, to read Judge DuBois's statement as a correct observation that Judge Brody had not considered the need to sanction Oidac for breaching the court's trust. While the government's argument is a plausible one, Judge DuBois's statement can be read as an assertion of fact, and we will therefore assess it for its factual accuracy.

According to Oidac, the record is clear that Judge Brody considered his supervised release violation. Oidac cites the following evidence to support this assertion: (1) the Pre-Sentence Report (PSR) upon which Judge Brody relied had assigned two points to Oidac's criminal history score, per U.S.S.G. § 4A1.1(d), for having committed the offense while on supervised release; (2) the prosecutor referenced the supervised release violation in its sentencing memorandum and at the sentencing hearing; (3) Judge Brody noted that Oidac engaged in criminal activity "two days after being released from

12

prison"[11]; and (4) Judge Brody emphasized Oidac's criminal history as a key consideration justifying the sentence. For the reasons that follow, we disagree with Oidac's assessment of this evidence.

First, while the prosecutor mentioned Oidac's supervised release violation, Judge Brody did not. Although Judge Brody mentioned that Oidac had engaged in drug activity "two days after being released from prison," this was part of a drug attribution analysis for which Oidac's release violation was irrelevant. Second, although the PSR assigned two points for Oidac's violation, this had no bearing on Oidac's criminal history category. Indeed, because of his lengthy criminal history, Oidac's criminal history score would have qualified as a Category VI on the Guidelines' chart even if the Probation Office had not assigned any points under U.S.S.G. § 4A1.1(d). Nor is it dispositive that Judge Brody emphasized Oidac's criminal history as a justification for the sentence. In her comments, Judge Brody referenced Oidac's location "on the criminal history *chart*" as the factor of importance, not the number of criminal history *points* he happened to have. App. at 133 (emphasis added). Based on the record before us, therefore, there is nothing to show that Judge Brody crafted her sentence based on a consideration of Oidac's violation of supervised release, and nothing in her reasoning suggests the sentence would have been different had Oidac not been on supervised release. Accordingly, Judge DuBois did not impose a sentence based on a clear factual error.

IV.

---

[11] App at 110.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.